CITY OF INDIANAPOLIS *v.* CARL NICKEL AND MARY NICKEL, CARL A. LAKE AND RHEA LAKE, JOSEPH PETROFF AND LILLIAM PETROFF, WILLIAM WELLS AND DOROTHY WELLS, THOMAS CONRY AND MARY CONRY, KEITH NANCE AND CAMILLA NANCE, CLARENCE HARWOOD AND MARGARET HARWOOD, LEO MEYER AND ELENOR MEYER, JOSEPH MCCARTHY.

[No. 2-473A94. Filed July 31, 1975. Rehearing denied September 4, 1975. Transfer denied March 9, 1976.]

*Gary R. Landau,* Corporation Counsel, City of Indianapolis, *William L. Soards, Bowen, Myers, Northam & Soards,* of Indianapolis, for appellant.

*George L. Diven,* of Indianapolis, for appellees.

WHITE, J.—The Board of Sanitary Commissioners of the City of Indianapolis constructed a local sanitary sewer in a residential area served only by septic tanks. Prior to the hearing on the final assessment roll (which would assess the total cost to the properties served on a square foot pro rata basis) the owners of ten lots filed with the Board a written remonstrance contending assessments were in excess of the actual benefits accruing to their lots. At the conclusion of the hearing the Board rejected the remonstrance and approved the assessment roll. The remonstrators (appellees here) filed their complaint for appeal in the Superior Court of Marion County, Room No. 3. Trial resulted in a decree substantially reducing the assessment on each of the ten lots. In its motion to correct errors and on appeal the City asserts as error: 1) that the court erred in not sustaining its "motion for directed verdict" at the close of plaintiffs' case, and, 2) that the decision is contrary to law in that the trial court was without jurisdiction to substitute its judgment for that of the Board with respect to the benefits accruing to the remonstrators' property. The remonstrators inject a third issue by contending that City waived its right to appeal from the Superior Court to this court by failing to file a petition for rehearing in the trial court within fifteen days after its decision as provided by Ind. Ann. Stat. § 48-4506 (Burns 1963 Repl.), IC 1971, 18-5-17-6,

For uncorrected error of the Superior Court in substituting its judgment for that of the Board with respect to the assessment of benefits, we reverse.

## I.

We were previously confronted with the third issue when appellees filed their motion to dismiss the appeal. We rejected their contention and overruled their motion by order without handing down an opinion stating our reason. We now state it.

Trial Rule 59(G) Indiana Rules of Procedure, makes a motion to correct errors a condition of appeal in all cases except "appeals from interlocutory orders, orders appointing or refusing to appoint a receiver, and from orders in proceedings supplemental to execution." We do not believe it was the intent of the General Assembly in enacting TR. 59, nor of the Supreme Court in adopting it, to require a losing party in a case of the kind before us to file both a § 48-4506 petition for rehearing and a TR. 59 motion to correct errors before he can appeal, even though the General Assembly failed to repeal § 48-4506. To hold that both a petition for rehearing and a motion to correct errors are required would run counter to the spirit of the new rules as expressed in Trial Rule 53.3 which looks unfavorably on repetitive motions.[1] We believe § 48-4506 is in conflict with TR. 59 and that paragraph 4 of the Supreme

---

1. "(A) Repetitive motions and motions to reconsider ruling on a motion. No hearing shall be required upon a repetitive motion or upon motions to reconsider orders or rulings upon a motion. Such a motion by any party or the court or such action to reconsider by the court shall not delay the trial or any proceedings in the case, or extend the time for any further required or permitted action, motion, or proceedings under these rules

"(B) Effect of court's delay in ruling upon repetitive motion or motion to reconsider ruling on a motion. Unless such a motion is ruled upon within five (5) days it shall be deemed denied, and entry of service of notice of such denial shall not be required. This rule 53.3 does not apply to an original motion for judgment on the evidence under Rule 50 after the jury is discharged, to amend or make additional findings of fact under Rule 52(B), an original motion to correct errors under Rule 59, or for correction of relief from judgments under Rule 60 or to the original motions to the extent expressly permitted or expressly designated as extending time under these rules."

Court's order of July 29, 1969, adopting the new rules, has superseded it.[2]

This same question arose in *City of Mishawaka* v. *Stewart* (1973), Ind. App., 291 N.E.2d 900, 906, 35 Ind. Dec. 26, under a different, but almost identical statute, Ind. Acts 1971, P.L. 252, § 1, being also IC 1971, 8-1-11-3 and Ind. Ann. Stat. § 48-6105 (Burns 1974 Supp.). Judge Sharp, speaking for the Third District of this court, discussed the question at length and reached the following conclusion:

> "As was pointed out earlier [201 N.E.2d at 905], the petition for rehearing was originally intended to be in lieu of an appeal from the decision of the trial court. Since an appeal is now permitted and, further, since the procedure for such an appeal is governed by the Indiana Rules of Procedure, the Petition for Rehearing serves no useful purpose and should not be considered a condition precedent to the perfection of an appeal. We hold that the Indiana Rules of Procedure requiring the filing of a motion to correct errors has superceded the requirement of § 48-6105 for the filing of a petition for rehearing."

That reasoning and that holding are equally applicable to the like requirement of § 48-4506, *supra,* and we so hold.

## II.

By thereafter presenting evidence, the City has waived its right to claim that the trial court committed error when it overruled the City's oral motion to dismiss[3] made at the conclusion of the remonstrators' case, but not ruled on until after the City had offered evidence.

---

2. "4. The rules appended to this Order shall supercede all procedural statutes in conflict therewith."

3. As phrased, the oral motion was "for a finding for the defendant." Indiana Rules of Procedure make no provision for "a finding for the defendant" on his motion at the conclusion of plaintiff's case but do provide by TR. 41(B) that at that point the defendant may move for a dismissal. It appears to be the federal practice that "[a] motion for a directed verdict in a non-jury case will be treated as if it were a motion to dismiss under Rule 41(b), while a motion to dismiss in a jury case will be treated as if it were a motion for a directed verdict under Rule 50(a)." *Wright & Miller,* 9 FED. PRAC. AND PROC. § 2371, p. 220, citing *Federal Ins. Co.* v. *Hardy* (D.C. Mo. 1963), 222 F. Supp. 68; *Johnson* v. *Chicago, M., St. P & P.R. Co.* (CA 9, 1968), 400 F. 2d 968.

*Hoosier Insurance Company* v. *Ogle* (1971), 150 Ind. App. 590, 592, 276 N.E.2d 876, 877.

### III.

Although the record and the briefs are silent on the subject, we assume that the proceedings before the Board were conducted pursuant to Ind. Acts 1931, Ch. 117, as amended, which is "An act concerning the construction of sewers and drains by cities of the first class". IC 1971, 19-2-16-1, *et seq.;* Ind. Ann. Stat. § 48-4001 *et seq.* (Burns 1963 Repl.).

§ 48-4006 provides that the lots and parcels of land abutting local sewers shall be assessed the "special benefits" accruing thereto and that the preliminary assessments of the cost of the sewer shall be estimated "and apportioned according to the total number of square feet of the lots . . . in the proportion that their areas in square feet, respectively, bear to the total assessed area".

§ 48-4009 provides that when construction of the sewer is completed an assessment roll shall be made out and notice given to property owners when the board will "receive, file and hear written remonstrances . . . upon the amounts assessed as benefits . . . and will determine the question as to whether such lots . . . have been or will be benefited in the amounts named on said roll" or in any sum.

§ 48-4010 provides for the final "public hearing *of all persons* interested, appearing and *remonstrating*" and the final determination by the board of the amounts to be assessed against each parcel of real estate served.

"Any difference between the aggregate amount so assessed and the aforesaid total cost of the improvement shall be assessed against and paid by said city, if such assessments are less than such cost; and such difference shall belong to the general fund of said city, if such assessments are greater than such cost; or such board, at its option, may return any such surplus pro rata to those whose property has been assessed. The board shall render its final decision as to all assessments, by reason of any changes and corrections as aforesaid, to conform to its findings in any respects as aforesaid, and shall complete said roll showing

the total amount of special benefits opposite each name and description of each piece of property on said roll. When so completed, said assessment roll shall be delivered forthwith to the department of finance."

§ 48-4011 provides that owners who have remonstrated may "appeal" to the circuit or superior court and "that such appeals shall be confined solely to a review by the court of the issue made by such assessment and the remonstrance thereto as to whether or not the amount of the assessment objected to is excessive and more than the actual benefits accruing to said property by reason of the said improvement." It also provides that "[t]he procedure thereon shall be as provided by the statute . . . relating to general appeals from the final decisions of boards of public works."

The latter statute is Ind. Acts 1933, Ch. 245, being IC 1971, 18-5-17-1, *et seq.*, and Ind. Ann. Stat. § 48-4501, *et seq.* (Burns 1963 Repl.). Section 4 of that act, being Burns § 48-4504, provides:

"The decisions of the board . . . appealed from shall be prima facie correct and the burden of proof in all such appeals shall be on the party appealing. All such appeals shall be tried by the court without the intervention of a jury. Such court shall try and hear de novo the issues upon the decision of such board . . . presented by written remonstrance thereto, . . . and thereby raised by such appeals, and the manner, method or means of arriving at any such . . . decision by said board, or common council, in making any award of damages or assessments of benefits,. . . . Such court according as the particular statute allowing any such appeal permits or prescribes the matters that may be considered thereon, may set aside, affirm, lower or increase any award or damages or assessment of benefits as it may deem just and duly order under the law and evidence; and may affirm, reverse, or modify the action or decision of such board or common council appealed from, in whole or in part."

The so-called "appeal" was commenced, as provided by § 48-4501, by the filing of a complaint which alleged, *inter alia:*

"5. The action and decision of said Board of Sanitary Commissioners in making said assessments was arbitrary and capricious, in that they were determined on allocation

of total cost of construction and without regard to the actual benefits accruing to the property assessed.

"6. The assessments made by said Board are excessive, unreasonable and contrary to law in that they were made without determination of actual benefits to the property so assessed, and are excessive and more than the actual benefits accruing to said property as a result of said improvement. The actual benefits are not more than the amounts shown on Exhibit A. [A list of remonstrators and their assessments.]"

The City filed an answer denying those two allegations (and admitting all others).

At the trial it was stipulated that the assessments against remonstrators' lots were "arrived at . . . on a square foot prorata basis of the total cost of the construction of the sewer . . . by statutory method of applying the final cost of construction to the square foot area of platted lots and to the square foot area of unplatted lots to a depth of 200 feet." The remonstrators also presented the live testimony of a qualified appraiser who stated his opinion as to the value of the remonstrators' various parcels before and after the installation of the sewers. It was his opinion that the value of each parcel had been appreciated by the installation of the sewer but the dollar amount of that rise (i.e., the "after" value minus the "before" value) was, in each instance, several hundred dollars less than the "benefit" assessed by the Board. In making his appraisal he used the "market approach" which he explained as "comparing . . . the property that you are appraising, with other lots that have been sold before with sewers and sold with septic tanks, and adjusted for similar neighborhoods, similar size, and like-type use."

The appraiser did not testify at the hearing before the Board. In fact, he did not make the inspections on which he based his appraisals until a week or so before the trial, which was long after the Board's hearing.

In addition to the appraiser, three of the property-owners-remonstrators-plaintiffs testified, giving their opinions, the

substance of which was that the sewer had not increased the value of their property.

The City (pursuant to stipulation) introduced into evidence a certified copy of the minutes of the meeting of the Board (Defendant's Exhibit B) at which the Board conducted a hearing "to consider whether the special benefits that will accrue to the property liable to be assessed for this sewer, will be equal to the estimated cost of the [proposed] improvement." Those minutes show that several persons spoke, including city officials and some twenty-nine "persons" not otherwise identified and whose statements are not in the minutes, either verbatim or in substance, although the minutes recite that "[a] transcript is being made a part of the file." Also, a certified copy (Exhibit C) of the minutes of the hearing on the final assessment rule, which shows that the remonstrators' attorney presented their remonstrance and stated that "the main objection was that said assessments are in excess of the actual benefits accruing to the property." The minutes also show that fifteen property owners were present "and all were given the opportunity to speak, some were recognized more than once." The minutes indicate that they complained, mainly about "the drainage problem in the area", but nothing in the minutes indicates what, if anything, was the evidence with respect to whether the benefits shown on the proposed assessment roll were more than, less than, or equal to the actual benefits. Nevertheless, the minutes recite that "[b]ased on the evidence submitted" the final assessment roll was confirmed and ordered transmitted to the City Controller's office.

At that point in the trial the court overruled the City's motion to dismiss.

The City then presented the live testimony of J. W. Hundley, an official of the Health and Hospital Corporation of Marion County in charge of the housing section. The gist of his testimony was that due to a twenty percent septic tank

failure rate[4] revealed by a survey of the neighborhood there was a health hazard which necessitated the sewer. He also testified that the sewer had eliminated the hazard.[5]

Both parties rested and the court took the case under advisement. A few days later the court entered findings of fact, conclusions of law, and a decree.

After reciting the nature of the case and some of its history, the findings and conclusions were:

"5. The amount of the individual assessments upon property subject to assessment was determined by the Board of Sanitary Commissioners solely by allocating the entire cost of sewer construction to the property upon a square foot basis.

"6. The assessments made by the Board of Sanitary Commissioners upon the property of these plaintiffs is in excess of the special benefits accruing to the property.

"And upon said facts states the following conclusion of law:

"1. The law is with the Plaintiffs."

The court's "decree" includes a further finding "that real estate of the plaintiffs . . . is not benefited to the amount of the assessments levied against it, but that said assessments are excessive and should be reduced as herein set forth." Immediately following is a list of the names of the remonstrating plaintiffs-appellees, followed by a description of their properties and a dollar amount under the heading "Reduced Assessment". The amount of the reduced assessment in each instance is exactly the amount the remonstrators' expert wit-

---

4. His method of saying 20% was this:
"Q. Tell the court the results of your survey.
"A. Possibly 20.9 of the residents had sewage failures of one form or another.
"THE COURT: What do you mean by 20.9?
"A. Well, in other words, say out of 100 homes there would be 20 of them had failures."
5. At one point while this witness was on the stand there was a colloquy in which the Court suggested that the need for the sewer was not in issue, "The question [the Court said] is assessments, benefits and damages, isn't it?" The Court noted that the appraiser had testified to taking into consideration the elimination of the health hazard and that the appraiser's "evaluation" and "the assessment by the Board" was all that he had before him,

ness had testified was the amount the sewer had appreciated the value of that particular property.

The substance of the court's judgment is that the final assessment roll adopted by the Board shall be modified to conform to the reduced assessments found and decreed by the court.

## IV.

Against the background of the foregoing detailed recital of the proceedings, the evidence, and the court's findings and decree, we now consider the second error asserted in the City's motion to corrct errors:

> "The decision of the Court was contrary to law by reason of the fact that the Court was without jurisdiction to substitute its judgment as to benefits of the property for that of the Board of Sanitary Commissioners."

We take it to be self-evident that the court below did, in fact, substitute its judgment for that of the Board. What we must decide is whether the court's action in so doing was contrary to law. In arguing that it was the City relies wholly on the following quotation from *Dittmer* v. *City of Indianapolis* (1968), 143 Ind. App. 621, 626, 242 N.E.2d 106, 110, as follows:

> "Proposition four alleges that the finding of the Board that the benefits to the property is equal to the cost is arbitrary and capricious.
>
> "This court cannot as a matter of law uphold such an allegation.
>
> " 'Since the lawmaking power has vested the authority to determine benefits and damages in the local authorities, and not in the courts, how can we know, or how could a court try the question, whether the supposed advantage was really a net gain to the property owners? . . .' *Edwards* v. *Cooper* (1906), 168 Ind. 54, 73, 79 N.E. 1047; *Johnson* v. *Indianapolis* (1910), 174 Ind. 691, 93 N.E. 17."

In response, the appellees attempt to distinguish *Dittmer* from this case in that *Dittmer* was an action to enjoin the City from taking bids, letting contracts and constructing a sewer, *whereas,* a portion of the statute under which this

case was "appealed" from the Board to the court below, Ind. Ann. Stat. § 48-4505 (Burns 1963 Repl.) provides, in part:

"If the court finds that the action or decision of the board or common council appealed from should not be affirmed in all things, then the court shall make a general finding, setting out, however, sufficient facts to show the nature of such proceeding and the court's decision thereon, and shall render judgment on all matters properly involved in such appeal, adjudging specifically the amount of the award of damages or the amount of the assessment of benefits as the case may be, so found by the court to be due as to each lot, parcel or description of real estate or property, involved in such appeal, and adjudging that such award or assessment shall be payable as provided by law; or judgment shall be rendered by the court on other matters involved where the particular appeal allowed by any statute does not relate to the award of damages or the assessment of benefits; and the court shall also render such judgment as to the costs of such appeal as the facts and law may require."

Appellees cite no case, and we believe there is none, which has applied the foregoing statutory provision as they would have us do. On the other hand the basic principles on which appellants' *Dittmer* statement rests are of constitutional dimensions which transcend the narrow procedural distinctions which appellees make.

The fundamental fault in appellees' argument (which is also the fatal error in the judgment below) is implicit in the concluding sentence of the answer brief: "As ruled in numerous cases, [none of which is cited] it would have been contrary to the constitution to deny property owners the right to appeal to the Courts." The right is to a *judicial review,* not an appeal, especially not an appeal by trial *de novo.*

In *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 105, 26 N.E.2d 399, after noting that "[t]he Industrial Board of Indiana is not a court; it is an administrative body" and after quoting from Acts 1929, Ch. 172, § 61, now Ind. Ann. Stat. § 22-3-4-8 (Burns Code Ed., 1974) which provides that "either party . . . may . . . appeal to the Appellate Court . . .," the Supreme Court of Indiana said:

"Strictly speaking, there is no such thing as an appeal from an administrative agency. It is correct to say that the orders of an administrative body are subject to judicial review; and that they must be so to meet the requirements of due process. Such review is necessary to the end that there may be an adjudication by a court of competent jurisdiction that the agency has acted within the scope of its powers; that substantial evidence supports the factual conclusions; and that its determination comports with the law applicable to the facts found. . . ."

Further at page 117:

"This leads to a consideration of what is the province of a court when a review of an administrative order is sought. It must be conceded that it is the undoubted function of the court to determine the matter of jurisdiction, that is, the power of the administrative agency to decide the question which it has undertaken to decide. Jurisdiction is grounded upon constitutional or statutory authority, the existence of which is always a judicial question. All the other powers of the judiciary with respect to the review of administrative orders may be said to be embraced in the duty to determine if the requirements of due process have been met. The constitutional guaranty of due process is one of broad and comprehensive implications, not readily definable with precision. Among its elements are reasonable notice, an opportunity for a fair hearing, and the right to have a court of competent jurisdiction determine if the finding is supported by evidence.

"The question of the sufficiency of the evidence to support an administrative order does not depend upon whether such evidence was received in conformity with the rules applicable to proceedings in courts; nor will the reviewing tribunal weigh conflicting evidence; enter into the field of determining the credibility of the witnesses; or consider an exercise of discretion, in the absence of a showing of an abuse thereof. These matters are the peculiar responsibility of the hearing agency. In the final analysis, the finding of an administrative agency will not be disturbed when it is subjected to the scrutiny of a judicial review, upon the claim that it is not supported by the evidence, unless it is made to appear that the finding does not rest upon a substantial factual foundation. This may be determined from a re-examination of the evidence upon which the administrative agency acted, or by the original reviewing court hearing evidence, depending upon the legislative scheme under which the agency operates. In the

instant case the Compensation Act makes provision for preserving the evidence upon which the board acted and it is available for purposes of review.

"In ascertaining whether the finding of the administrative agency meets the requirement of due process, the court will look to the substance rather than the form. The mode by which the facts were found will be regarded as a means rather than an end, and the finding will not be set aside because the agency did not conform to the court-made formulas of proof. If, however, it should be made to appear that the evidence upon which the agency acted was devoid of probative value; that the quantum of legitimate evidence was so proportionately meagre as to lead to the conviction that the finding does not rest upon a rational basis; or that the result of the hearing must have been substantially influenced by improper considerations, the order will be set aside, not because incompetent evidence was admitted, but rather because the proof, taken as a whole, does not support the conclusion reached."

The review conducted by the court below obviously did not follow the foregoing guideline, but the manner in which the court did proceed and the judgment it rendered arguably are authorized by the statute (Ind. Ann. Stat. § 48-4504) which states, *inter alia:* "Such court shall try and hear de novo the issues upon the action or decision of such board. . . ." However, similar provisions in other statutes authorizing "appeals" from administrative and legislative agencies have never been so construed in Indiana.

Typical of the Indiana Supreme Court's view of such statutory provisions in the following excerpt from *City of Evansville* v. *Nelson* (1964), 245 Ind. 430, 442, 199 N.E.2d 703:

"Admittedly, there is some confusion in the decisions of the several states as to the law regarding the nature of the proceedings in a trial court where it is provided by statute that, in event of an appeal from a decision of a public administrative board, the cause shall be tried *de novo* in the trial court. The conflict in these cases is primarily due to the fact that there is no uniformity in the statutes which govern such 'appeals.' However, the law regarding the nature of such proceedings has been clearly established in this state by the decisions of this court. Upon this issue this court has stated:

" '. . . In *City of Elkhart* v. *Minser* (1937), 211 Ind. 20, 25, 5 N.E.(2d) 501, 503, it is held that the so-called appeal to the circuit or superior court is in the nature of an action for a mandatory injunction; that the purpose of the action is to determine the legality of the order made by the Board of Public Works and Safety; that: "The court will not undertake to control the discretion of such boards in making orders in the administration of the affairs of the state so long as the orders are not tainted with fraud, capriciousness, or illegality." . . .

" 'When it appears to the court that the evidence before the ministerial board was conflicting, and this is conceded by the appellants' complaint in this case, and that there was substantial evidence before the ministerial body justifying its action, there is no illegality, and the determination of the ministerial body should not be disturbed. *School City of Peru et al.* v. *State ex rel. Youngblood* (1937), 212 Ind. 255, 7 N.E.(2d) 176.' *Lloyd* v. *City of Gary* (1938), 214 Ind. 700, 703-704, 17 N.E.2d 836.

"Notwithstanding the provisions of the statute, *supra,* that the cause be tried *de novo* on appeal to the trial court, this court in the case of *State ex rel. Pub. Serv. Comm.* v. *Boone C. C., etc.* (1957), 236 Ind. 202, 211-212, 138 N.E.2d 4, stated the rule of law as follows, in part:

" '. . . [A] review or appeal to the courts from an administrative order or decision is limited to a consideration of whether or not the order was made in conformity with proper legal procedure, is based on substantial evidence, and does not violate any constitutional, statutory, or legal principle . . .'

"Consistent with the rule above enunciated, on review of an administrative act or order where the court is said to hear the matter *de novo,* the burden is on the complainant to establish the invalidity of the administrative action and, in doing so, the trial court may not merely substitute its judgment for that of the administrative body. It may not interfere with the exercise of the discretionary authority of that body, unless it is made to appear that it acted in the exercise of that discretion in an arbitrary, capricious, fraudulent, or otherwise illegal manner. *Pub. Ser. Comm. et al.* v. *City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308; *State ex rel. Pub. Serv. Comm.* v. *Boone C. C. etc.* (1957), 236 Ind. 202, 138 N.E.2d 4; *N.Y., C. & St. L. R. R. Co.* v. *Singleton* (1935), 207 Ind. 449, 190 N.E. 761, *cert. denied* 296 U.S. 578, 56 S.Ct. 89."

In *Uhlir* v. *Ritz* (1970), 255 Ind. 342, 345, 264 N.E.2d 312, the Supreme Court again had occasion to interpret a statute (now Ind. Ann. Stat. § 35-4-5-24 [Burns Code Ed., 1975]) which provides for a judicial review *de novo* of a revocation by the State Insurance Commissioner of a bailbondsman's license. In reversing the trial court's reinstatement of a license revoked by the Commissioner, Chief Justice Hunter said:

"It is the term 'de novo' which must concern us. While in the usual sense of that phrase one might envisage a complete retrial of the issues involved, our constitutional relationship with the other branches of government precludes such a review. Our legislature is aware of our duty and its scope and we will not attach to its language the innuendo that it wishes our courts to exceed the bounds of proper re-examination. . . .

\* \* \*

"By reviewing and weighing the evidence anew, without granting weight to the findings of the hearing commissioner, the court in effect made a nullity of the administrative fact finding efforts. This was error; the court was not to determine if in *its* judgment the finding was reasonable, but rather it was to determine if the findings of fact were capricious, arbitrary, an abuse of discretion, in excess of statutory authority or unsupported by substantial evidence. "In making its decision, the court was entitled to hear and weigh the evidence against a standard of administrative discretion validly employed, but it could not simply substitute its judgment for that of the administrative body."

The standard of administrative discretion a local board may validly employ in ordering the construction of public improvements and in assessing the benefits thereof is not, in all respects, the standard governing such matters as license revocation or the awarding of workmen's compensation benefits. In the latter cases the administrative agency's findings must be supported by the evidence formally presented to it. On the other hand, local boards involved in public improvement benefit assessments are not limited to the weight of the evidence formally presented to them but must also rely on their own expertise and judgment in such matters. *Edwards* v. *Cooper, supra* (168 Ind.

54, 79 N.E. 1047) ; *Johnson* v. *Indianapolis, supra* (174 Ind. 691, 93 N.E. 17). In the latter case the court said:

> "The insistence of appellant that the board of public works must decide the question of benefits upon the weight of the evidence which is formally presented to it at the preliminary hearing, would completely defeat the very purpose of the statute, which permits the board, upon its own judgment, to begin and carry out the construction of a local sewer or drain." (174 Ind. at 704.)

The same reasoning is applicable to the adoption of the final assessment roll. And a final assessment based "only in the multiplication of the amount of square footage within the . . . property [assessed] by a cost per square foot of the entire assessment area"[6] is not, for that reason, an arbitrary or capricious assessment. The statute (§ 48-4006, *supra*) requires the result of such a computation to be considered the primary assessment. The burden is on the remonstrating property owner to convince the board at the final hearing that the figure thus arrived at is in excess of the actual benefits. If he fails to do so and "appeals" to the court, the board's decision is *prima facie* correct and the appealing remonstrator has the burden of showing the court that the assessment was capricious, arbitrary or an abuse of discretion. *Uhlir* v. *Ritz, supra;* § 48-4504, *supra.*

We hold that the Superior Court committed reversible error in failing to correct the error called to its attention in the second specification of the City's motion to correct errors, i.e., that its decision was contrary to law in substituting its judgment as to benefits for that of the Board.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

Sullivan, P.J., and Buchanan, J., concur.

NOTE.—Reported at 331 N.E.2d 760.

6. *Fritz* v. *Town of Clermont* (1973), 155 Ind. App. 180, 292 N.E.2d 258, 262.