Melvin SANDOCK, Betty Sandock, Sam Sandock, Ruby Sandock and B. & S. Sandock, Inc., Appellees-Plaintiffs,

v.

F. D. BORKHOLDER COMPANY, INC., Appellant-Defendant.

No. 3–179 A 25.

Court of Appeals of Indiana, Third District.

Nov. 28, 1979.

Rehearing Denied Jan. 16, 1980.

Sam Mirkin, South Bend, for appellant-defendant.

Myron J. Hack, Hack & Asher, South Bend, for appellees-plaintiffs.

STATON, Judge.

B. & S. Sandock, Inc. (Sandock) and F. D. Borkholder Company, Inc. (Borkholder), entered into a contract for the construction by Borkholder of a concrete block addition to Sandock's pre-existing structure. The addition was to be used as a retail showroom and warehouse in furtherance of Sandock's furniture and carpet business. Sandock was unable to use the addition for its intended use, however, because of a recurring moisture problem on the inside of one of the walls. Sandock filed suit seeking both compensatory and punitive damages. After trial by the court, Sandock was awarded compensatory damages in the amount of $8,711.69 and punitive damages in the amount of $6,500.00.

In its appeal to this Court, Borkholder contends that: (1) the judgment is not supported by sufficient evidence; (2) the trial

court erred in not granting Borkholder's motion for an involuntary dismissal; and (3) the trial court erred in awarding punitive damages.[1]

We affirm in part and reverse in part.

## I.

### Sufficiency of the Evidence

■ Borkholder's argument with respect to the sufficiency of the evidence is two-fold. First, Borkholder argues that because Sandock has been able to use certain areas of the addition for storage, Sandock was not damaged at all. This argument is without merit. Because of the unsightliness of one of the walls, Sandock was not able to use the addition as a showroom. Because of the dampness, Sandock was only able to use part of the addition for storage. Additionally, the useful life of the addition was less than it would have been had the construction proceeded pursuant to the plans and specifications embodied in the contract. Sandock proved that it had been damaged.

■ Borkholder's second attack on the sufficiency of the evidence concerns testimonial conflicts as to the cause of the moisture problem. Several witnesses testified that the moisture problem was not attributable to Borkholder's work, while others testified that it was. Borkholder maintains that because of that conflict, the judgment was not supported by sufficient evidence. In propounding this argument, Borkholder has misconstrued the trial court's function as the finder of facts and our function as a court of appellate review. The case was heard below without the intervention of a jury. Accordingly, it was the function of the trial court to weigh the evidence and assess credibility in an effort to resolve the factual disputes. When, as here, the sufficiency of the evidence is raised as an issue on appeal, our function is to determine if there is substantial evidence of probative value to support the judgment based on an examination of the evidence most favorable to the party that prevailed below together with the reasonable inferences that can be drawn therefrom. *Peters v. Davidson, Inc.* (1977), Ind.App., 359 N.E.2d 556. Such an examination in the instant case discloses that the judgment is supported by sufficient evidence.

## II.

### Involuntary Dismissal

■ At the close of Sandock's case-in-chief, Borkholder moved for an involuntary dismissal. Involuntary dismissals are provided for in TR. 41(B), which reads in pertinent part as follows:

"After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that considering all the evidence and reasonable inferences therefrom in favor of the party to whom the motion is directed, to be true, there is no substantial evidence of probative value to sustain the material allegations of the party against whom the motion is directed. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. . . ."

Borkholder contends that there was no substantial evidence of probative value concerning the amount of the damages that were incurred by Sandock and that the trial court therefore erred in not granting the motion.[2]

---

1. Borkholder's additional contention that the judgment is contrary to the law has been waived because of its failure to comply with the requirements of Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). *Weenig v. Wood* (1976), Ind.App., 349 N.E.2d 235.

2. Borkholder presented evidence after making the motion. Generally, the subsequent presentation of evidence constitutes a waiver of any error in the denial of such a motion. *City of Indianapolis v. Nickel* (1975), 165 Ind.App. 250, 331 N.E.2d 760. And, generally, a conclusion by this Court that the evidence was sufficient

Sandock offered testimony from which the trial court could reasonably have concluded that the addition was not suitable for the purposes contemplated by the contract. Sandock offered further testimony that the amount required to remedy the defects would be slightly in excess of $17,-000. There was, therefore, sufficient evidence to overcome Borkholder's motion for an involuntary dismissal.

## III.

### Punitive Damages

■ Borkholder failed in many respects to comply with the specifications embodied in the contract. This constituted a breach of the contract. As this Court recently noted in *Monte Carlo, Inc. v. Wilcox* (1979), Ind.App., 390 N.E.2d 673, punitive damages are generally not recoverable in actions for breach of contract. Rather, the non-breaching party is limited to recovering compensatory damages. Punitive damages are recoverable only when tortious conduct accompanies or mingles with the breach and it appears that the public interest would be served by the deterrent effect of the punitive damages. *Hibschman Pontiac, Inc. v. Batchelor* (1977), 266 Ind. 310, 362 N.E.2d 845.

■ Several of Borkholder's variances from the specifications were undisclosed, latent variances.[3] Such variances constitute a form of fraud or misrepresentation. The trial court could thus have properly concluded that tortious conduct accompanied the breach.

We fail to perceive, however, any public interest affected by the imposition of punitive damages. Borkholder and Sandock possessed equal bargaining power both before and after their agreement was reduced to writing. Borkholder's conduct was not "oppressive" as that term is used in the context of punitive damages. *See Vernon Fire & Casualty Insurance Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173. Nor can we say that the variances in this case endangered the safety of the public. Although we do not condone Borkholder's actions, we cannot say that those actions warranted, under the guidelines of *Vernon Fire & Casualty* and its progeny, the imposition of punitive damages. Sandock was entitled to compensation for all of its damages which proximately resulted from Borkholder's breach, but it was not entitled to punitive damages.

The judgment of the trial court is reversed to the extent that it awards punitive

to support the judgment would eliminate the need for a discussion of the propriety of the denial of a motion for an involuntary dismissal. *Winston v. State* (1975), 165 Ind.App. 369, 332 N.E.2d 229.

Here, however, the trial commenced on September 6, 1977. After *two days of testimony* the trial was recessed for five months. The trial resumed on February 14, 1978. Sandock concluded its case-in-chief the next day, at which time Borkholder made its motion. The trial judge indicated that because of the five month recess he would have to review the first two days' testimony before he could rule on the motion. Because of the congestion of the court calendar and because of the delay that would result if the trial was recessed so that the judge could review the earlier testimony, the judge asked Borkholder if it would present its evidence with the understanding that he would reserve ruling on the motion until he had an opportunity to review the prior testimony. Borkholder consented and then presented its case-in-chief. The motion was implicitly denied when judgment was entered for Sandock.

Under these circumstances we do not believe that Borkholder's decision to proceed constituted a waiver of any error in the denial of the motion. Nor is our conclusion in Section I, *supra*, that the judgment was supported by sufficient evidence dispositive of this issue. In reviewing the sufficiency of the evidence, we were able to examine all of the evidence most favorable to Sandock, including that evidence elicited during Borkholder's case-in-chief and during rebuttal. Our review of the denial of the motion for involuntary dismissal, however, is limited to an examination of the evidence most favorable to Sandock which was presented prior to the filing of the motion.

Hence, we will proceed to discuss the denial of Borkholder's motion for an involuntary dismissal.

3. E. g., some of the concrete blocks forming the foundation were supposed to be filled with mortar. An examination conducted after the completion of the addition revealed that the blocks were not so filled.

damages. In all other respects, the judgment is affirmed.[4]

HOFFMAN, J., concurs.

GARRARD, P. J., concurs in part and dissents in part with opinion.

GARRARD, Presiding Judge, concurring in part and dissenting in part.

I concur with the majority disposition of issues I & II. However, I disagree with the court's treatment of the punitive damages issue.

In *Hibschman Pontiac, Inc. v. Batchelor* (1977), 266 Ind. 310, 362 N.E.2d 845 our Supreme Court reexamined the application of punitive damage awards to claims arising from a breach of contract. The court observed that where the conduct of a party in breaching his contract also established all the elements of a common law tort, punitive damages might be awarded.[1] 362 N.E.2d 847. The court, apparently intending an expansion of the foregoing,[2] then stated that punitive damages might be available "whenever the elements of fraud, malice, gross negligence or oppression *mingle* in the controversy." 362 N.E.2d 847.[3] The court then stated that in either instance, to justify a punitive award "it must appear that the public interest will be served by the deterrent effect" of the award. 362 N.E.2d 848.

While some further delineation may be necessary to clearly draw the lines prescribed by *Hibschman*, it is not necessary to our decision in this case.

The basic contentions are simple. The addition contracted for did not meet the purchaser's expectations. It appears there were deviations from the plans and specifications. The controlling question is whether the deviations were reasonable or merely negligent on the one hand, or whether they were accomplished through fraud or a reckless indifference to the probable consequences on the other.[4]

If the facts established the latter, I have no problem identifying the public interest to be served in requiring that the builders of public buildings be deterred from fraudulently disregarding building code requirements or those contained in the plans and specifications they have agreed to comply with.

The problem presented in the present appeal is that while the appellant might have attempted to demonstrate on the facts in evidence that fraud, recklessness, etc. were not established, he has totally failed to do so. Since it appears that the trier of fact might have inferred such intent from the evidence *and* the court indeed did so infer, we may not reweigh the evidence or search the record to find it disputed. Borkholder has simply failed to demonstrate error on the facts, and accordingly, the award should be affirmed.

---

4. Sandock contends that the appeal is frivolous and urges us to award additional damages pursuant to AP. 15(G). Because of our resolution of the punitive damages issue, we must decline Sandock's request.

1. Assuming that the conduct was of the aggravated kind necessary to *any* award of punitive damages.

2. *Compare Flint & Walling Mfg. Co. v. Beckett* (1906), 167 Ind. 491, 79 N.E. 503.

3. Citing *Vernon Fire & Casualty Ins. Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173.

4. In this regard it is interesting to note that neither party attaches much significance to the fact that the builder employed the architect and that his agreement with the purchaser was essentially to supply the addition in a good and workmanlike manner.