**Phillip D. KOLLAR, Emilie J. Kollar, and North American Property Management, Appellants–Plaintiffs,**

v.

**CIVIL CITY OF SOUTH BEND, et al., Appellees–Defendants.**

**No. 71A05–9703–CV–108.**

Court of Appeals of Indiana.

June 10, 1998.

Rehearing Denied Aug. 5, 1998.

---

Donald E. Wertheimer, South Bend, for Appellants–Plaintiffs.

Ann–Carol Simons, South Bend, for Appellees–Defendants.

## OPINION

SHARPNACK, Chief Judge.

Phillip and Emilie Kollar appeal the trial court's order affirming the order of the South Bend City Enforcement Division ("the City") to demolish a house owned by them. The Kollars raise six issues for our review, which we consolidate and restate as:

1) whether the trial court applied the appropriate standard of review in reviewing the City's demolition order;

2) whether the evidence supports the trial court's findings;

3) whether the findings support the trial court's conclusion that the demolition order was reasonable;

4) whether the City's demolition order is erroneous for lack of ascertainable standards; and

5) whether the evidence supports the trial court's conclusion that they had not been subjected to bias by city officials.

We affirm.

The facts relevant to this appeal follow. The Kollars acquired ownership of a property at 1021 West Thomas Street around March of 1979. Beginning in 1984, the City served the Kollars with several repair orders for various problems with the property. On February 23, 1994, the City served the Kollars with an order requiring repair of certain building code violations. On March 2, 1994,

the City served the Kollars with an order requiring demolition of the property.

On March 19, 1994, a hearing officer held a hearing on the demolition order and affirmed the order. On March 24, 1994, the Kollars petitioned the circuit court for judicial review of the hearing officer's decision. On November 19, 1996, following a trial, the trial court affirmed the demolition order. Other facts will be provided as needed for discussion.

## I.

█ The first issue raised is whether the trial court applied the correct standard of review when reviewing the City's demolition order. Indiana Code § 36-7-9-8 provides for judicial review of actions taken by a municipality to enforce building standards. This section provides in relevant part:

> "(a) An action taken under ... this chapter is subject to review by the circuit or superior court of the county in which the unsafe premises are located ...
>
> \*   \*   \*   \*   \*   \*
>
> (c) An appeal under this section is an action de novo. The court may affirm, modify, or reverse the action taken by the hearing authority."

I.C. § 36-7-9-8. The Kollars argue that the words "action de novo" require the trial court to rehear the evidence and decide anew whether the demolition order was reasonable. They base their interpretation of the statute on the fact that it does not provide for the preparation of a transcript of the hearing officer's proceedings. They maintain that because a record of the proceedings below was not preserved, it is necessary for the trial court to rehear the evidence and decide the issues anew. We disagree.

█ It is well established in Indiana law that the term "de novo" in statutes providing for judicial review of administrative orders does not authorize a trial court to substitute its judgment for that of the agency below. In *Uhlir v. Ritz*, our supreme court addressed the meaning of this term in an appeal from the revocation of a bail bondsman license. *Uhlir v. Ritz*, 255 Ind. 342, 264 N.E.2d 312 (1970). The court stated:

> "It is the term 'de novo' which must concern us. While in the usual sense of that phrase one might envisage a complete retrial of the issues involved, our constitutional relationship with the other branches of government precludes such a review. Our legislature is aware of our duty and its scope and we will not attach to its language the innuendo that it wishes our courts to exceed the bounds of proper reexamination. Even if such was clearly mandated, we could proceed only so far in such reviews as the dictates of constitutional law permit."

*Id.*, 255 Ind. at 345, 264 N.E.2d at 314; *see also, City of Mishawaka v. Stewart*, 261 Ind. 670, 677, 310 N.E.2d 65, 68 (1974) (holding that the term "de novo" in a statute allowing for judicial review of the dismissal of a fireman by the city board of public works and safety means "not that the issues at the hearing before the board are heard and determined anew, but rather that new issues are formed and determined."); *City of Indianapolis v. Nickel*, 165 Ind.App. 250, 263, 331 N.E.2d 760, 768 (Ind.Ct.App.1975) (holding that the term "de novo" in a statute providing for judicial review of a decision of a city board of sanitary commissioners did not permit the trial court to redecide the city council's decision on a vacation petition).

█ We hold that the same reasoning and, thus, the same interpretation of the words "de novo," applies to I.C. § 36-7-9-8. Therefore, the standard of review which was applied by the supreme court in *Uhlir* is applicable here and is as follows:

> "A court reviewing under a de novo statutory direction may, to a limited extent, weight the evidence supporting the finding of fact by an administrative agency. But it may negate that finding only if, based upon the evidence as a whole, the finding of fact was
>
> (1) arbitrary,
>
> (2) capricious,
>
> (3) an abuse of discretion,
>
> (4) unsupported by the evidence or
>
> (5) in excess of statutory authority."

*Uhlir*, 255 Ind. at 345-346, 264 N.E.2d at 314 (citations omitted). Further, the trial court may not substitute its judgment for that of

the agency below as "the facts [are to be] determined but once." *City of Mishawaka,* 261 Ind. at 677, 310 N.E.2d at 69.

■ We are not persuaded by the Kollars' argument that the absence of a transcript of the original proceeding for the trial court's review requires a different interpretation of "de novo" than the one clearly outlined by the above case law. Specifically, the Kollars assert that because no transcript of the original proceeding was prepared, there is no way to assure that the evidence presented to the trial court for the purposes of its review was the same evidence originally presented to the hearing officer. First, the Kollars had the burden to prove that the demolition order was unreasonable.[1] As such, they were responsible for the presentation of evidence.

Moreover, the supreme court has held that the trial court may review an agency's decision through either a "re-examination of the evidence upon which the administrative agency acted, or by the original reviewing court hearing evidence, depending upon the legislative scheme under which the agency operates." *Warren v. Indiana Telephone Company,* 217 Ind. 93, 117, 26 N.E.2d 399, 409 (1940). As such, we conclude that a transcript is not necessary for the application of the standard of judicial review which we adopt here. Therefore, it was appropriate for the trial court to rehear the evidence upon which the officer below made its decision. *See id.*

After reviewing the trial court's findings and conclusions, we conclude that the trial court applied the correct standard in its review of the demolition order. With respect to the demolition order, the trial court concluded that "the plaintiffs have failed to prove that the actions of the hearing officer and the City were arbitrary, capricious, and voidable." Record, p. 182. The trial court also correctly concluded that it should only

fully consider the new issues raised by the Kollars' complaint. *See City of Mishawaka,* 261 Ind. at 677, 310 N.E.2d at 68. Therefore, we hold that the trial court determined and applied the correct standard of review for an appeal from a demolition order pursuant to I.C. § 36–7–9–8.

## II.

We next address the Kollars' contentions that certain specific findings of the trial court are not supported by the evidence. As noted above, we will negate a finding of the trial court if, based upon the evidence as a whole, the finding of fact was arbitrary, capricious, an abuse of discretion, unsupported by the evidence, or in excess of statutory authority. *Uhlir,* 255 Ind. at 345–346, 264 N.E.2d at 314.

■ First, the Kollars assert that the trial court's finding that the house required "major reconstruction" to bring it up to code standards was not supported by the evidence. Record, p. 464. Our review of the record reveals that the inspection report on the house indicates a great number of repairs were needed. A sample of the problems listed include a severely deteriorated foundation, rotting joists and other structural problems, lack of roof drainage, possible electrical problems, and evidence of rodent and insect infestation. In addition, an inspector testified that the total cost of these repairs would be $18,000 to $20,000. From this evidence, we conclude that the trial court's finding that the house required "major reconstruction" is supported by the evidence and is not arbitrary, capricious, or an abuse of discretion. See *Uhlir,* 255 Ind. at 345–346, 264 N.E.2d at 314.

■ The Kollars next challenge the trial court's finding that "this case involves falling plaster such that it can strike children who

---

1. Although the Kollars argue that the City had the burden to prove that the demolition order was reasonable, we find this assertion to be contrary to the law in Indiana. The party seeking to upset an administrative order has the burden of proof. *Smith v. City of Shelbyville,* 462 N.E.2d 1052, 1056 (Ind.Ct.App.1984); *see also Department of Financial Inst. v. State Bank of Lizton,* 253 Ind. 172, 176, 252 N.E.2d 248, 251 (1969) (stating that "the law is overwhelming in Indiana

that the burden is on the party seeking to upset an administrative order to show ... that there are no substantial facts to support the finding or that the action was arbitrary and capricious and outside the jurisdiction or authority of the Department"); *City of Indianapolis,* 165 Ind.App. 250, 266, 331 N.E.2d 760, 769 (1975) (holding that "[t]he burden is on the remonstrating property owner to convince the board ... that the

occupy the structure and a chimney which is in danger of collapsing upon the citizens of this city standing outside the structure." Record, p. 183. The evidence presented at trial was that the mortar between the bricks in the chimney had deteriorated and "[i]f the mortar is not repaired between the bricks, the bricks tend to come loose. The chimney can lean. Eventually it could fall down." Record, p. 290.

The Kollars assert that this evidence does not support a conclusion that "the chimney is in *imminent* danger of falling down or an *immediate* hazard." Appellant's brief, p. 17 (emphasis added). Although we agree that the evidence would not support a finding that the chimney was in immediate danger of collapsing, that is not what the trial court in fact found. The trial court merely found that the chimney is "in danger" of collapsing. Record, p. 183. The testimony of the inspector does support the finding that without repair the chimney could pose a hazard.

The Kollars also assert that the finding that "this case involves falling plaster such that it can strike children who occupy the structure" is unsupported by the evidence because the house was currently unoccupied. Record, p. 183. However, the trial court did not find that the plaster was endangering a current occupant, only that the possibility existed. Further, this finding simply appears to be reflective of the evidence presented at trial that a one and a half year old child had actually been injured in the house by falling plaster in 1987. Record, p. 268. Therefore, we conclude that the finding is also supported by the evidence and not arbi-

trary, capricious, or an abuse of discretion. *See Uhlir,* 255 Ind. at 345–346, 264 N.E.2d at 314.

■ Finally, the Kollars assert that the evidence does not support the trial court's finding that they were given adequate notice and opportunity to repair the property.[2] We disagree. The record reveals that the property had an extensive history of disrepair. The inspector testified that the attempts to have the property repaired began in 1984, and that, since then, approximately twelve inspections had been performed on the property. The inspector also testified that several repair orders had been issued in that period with which the owners had not fully complied.[3] The inspector further testified about several specific recurring repair problems, such as foundation and gutter problems, which were noted as problems in separate inspection reports over a period of several years. In sum, the inspector stated, "there was no substantial repair compliance throughout the history of this house...." Record, p. 281. This evidence supports the trial court's finding that the Kollars had adequate notice and opportunity to make the requested repairs. Therefore, we conclude that this finding is supported by the evidence and not arbitrary, capricious, or an abuse of discretion. *See Uhlir,* 255 Ind. at 345–346, 264 N.E.2d at 314.

### III.

■ The next issue we must address is whether the trial court's decision to uphold

---

figure arrived at is in excess of the actual benefits.").

2. The Kollars also argue that the demolition order was unreasonable because they had been given inadequate opportunity to comply with a repair order issued approximately one week prior to the demolition order. The statute does require that orders must allow a sufficient time period for compliance. *See* I.C. § 36–7–9–5(c). However, under the circumstances of this case, we find the Kollars' argument to be unpersuasive. First, the Kollars were given multiple opportunities to repair the property pursuant to numerous earlier repair orders issued since 1984. In addition, the statute provides the authority for the code enforcement division to repeal or rescind any order. I.C. § 36–7–9–6. In effect, the City repealed the repair order when it

issued the demolition order. Finally, this appeal is from the demolition order and not the repair order. Thus, the reasonableness of the repair order is outside of the scope of this appeal. Therefore, we conclude that the Kollars' argument with respect to the repair order is without merit.

3. The Kollars assert that it was improper for the trial court to consider noncompliance with past repair orders in its review of the demolition order because the statute states that orders expire two years from the day of notice of the order. I.C. § 36–7–9–5(d). However, we do not find any reason to conclude that this provision has any effect on the trial court's consideration of noncompliance with expired repair orders when determining if a demolition order is appropriate.

the City's demolition order was arbitrary, capricious, an abuse of discretion, unsupported by the evidence or in excess of statutory authority. *See Uhlir*, 255 Ind. at 345–346, 264 N.E.2d at 314. The statute providing for actions to be taken by an enforcement authority with respect to an unsafe premises provides, in part, that "[t]he ordered action must be reasonably related to the condition of the unsafe premises and the nature and use of nearby properties." I.C. § 36–7–9–5(a).

The Kollars assert that because there was evidence that the house could be made safe by repair, the demolition order was unreasonable. They cite *Smith v. Lippman* in support of their contention that before an enforcement authority can order that an unsafe building be destroyed, it must prove that the defects or unsafe conditions cannot be repaired. *Smith v. Lippman*, 222 Ind. 261, 265–266, 53 N.E.2d 157, 158 (1944). However, the court in *Smith* specifically stated that "[u]nder the circumstances, then, the order of the fire marshall that the building be destroyed was unlawful, arbitrary, and unreasonable, *since it did not afford the owner opportunity to repair the building . . . .*" *Id.*, 53 N.E.2d at 157 (emphasis added).

We agree that where a building can be reasonably repaired, it may be improper to order demolition of the property. However, the facts before us require further consideration. The evidence here clearly demonstrates that the Kollars have been afforded ample opportunity to repair the property and have failed to do so on many occasions over several years. In light of these facts, we conclude that the fact that the property can be repaired is not the dispositive consideration in reviewing the City's demolition order. An equally important consideration is whether the building *will* be repaired. Moreover, we agree with the City that, theoretically, any building can be repaired. The more relevant question in a case such as this is whether the option of repair will effectively correct the condition considered to be a danger to the public. When the City has little confidence that the repairs will be made, demolition may be a reasonable alternative. Given the extensive history of disrepair for

this property, we conclude that demolition was a reasonable option even in light of the possibility of repair. *See* I.C. § 36–7–9–5(a).

Therefore, given the trial court's findings that the property had been in violation of city building codes for approximately ten years; that despite multiple opportunities to repair the property, the property was still in disrepair; that the property would require "major reconstruction"; and that the building was unsafe, we conclude that the trial court's order affirming the City's demolition order was not arbitrary, capricious, an abuse of discretion, or in excess of statutory authority. Record, p. 179; *See Uhlir*, 255 Ind. at 345–346, 264 N.E.2d at 314.

### IV.

■ The Kollars further assert that the trial court erred in upholding the demolition order because the City violated the "ascertainable standards" rule. This rule requires that an administrative decision must be made in accordance with previously stated, ascertainable standards. *Podgor v. Indiana Univ.*, 178 Ind.App. 245, 258, 381 N.E.2d 1274, 1283 (1978). However, as asserted by the City, the Kollars have waived appellate review of this issue by failing to properly raise it below.

■ A party may only obtain judicial review of issues that were properly raised to the trial court. *Franklin Bank & Trust Co. v. Mithoefer*, 563 N.E.2d 551, 553 (Ind.1990). However, the Kollars assert that an issue, even if not raised in the pleadings, may be tried by express or implied consent. Ind. Trial Rule 15(B). They argue that they raised the issue of lack of ascertainable standards when they elicited testimony from the Director of Code Enforcement as to the absence of standards used in deciding to demolish a house. Thus, they argue that the City was on notice of this issue and, because the City did not object to the testimony, the issue was tried by implied consent. We disagree.

We have previously held that

"[a] party is entitled to some notice that an issue is before the court which has not been pleaded or has not been agreed to in a pre-trial order. This is especially true

where the new issue is not unequivocally clear by the evidence being submitted. This is not being technical. This is being fair."

*Aldon Builders, Inc. v. Kurland*, 152 Ind. App. 570, 580, 284 N.E.2d 826, 832 (1972). Here, the testimony cited by the Kollars as having raised the issue was evidence that was also directly related to several other issues at trial. Furthermore, the issue of a lack of ascertainable standards is rather specific in nature and may not be readily apparent to a party unless raised by particular language. In light of this, we are not convinced that the presentation of the testimony made this issue "unequivocally clear." *Id.* Therefore, we conclude that the Kollars did not properly raise this issue and, as a result, they have waived appellate review of it.

## V.

■ The final issue raised for our review is whether the trial court's conclusion that the demolition order was not a result of bias on the part of the City was erroneous.[4] Again, we will review the trial court's conclusion to determine if it is supported by the evidence and is not arbitrary, capricious, or an abuse of discretion. *See Uhlir*, 255 Ind. at 345–346, 264 N.E.2d at 314.

■ Due process requirements in the context of administrative proceedings are clear in requiring that a hearing be conducted before an impartial body. *Indiana Civil Rights Com'n v. Southern Indiana Gas & Elec. Co.*, 648 N.E.2d 674, 691 (Ind.Ct.App. 1995), *trans. denied.* However, we will presume that an administrative board will act properly. *New Trend Beauty School, Inc. v. Indiana State Board of Beauty Culturist Examiners*, 518 N.E.2d 1101, 1105 (Ind.Ct. App.1988). "In the absence of a demonstration of actual bias, the courts should not interfere with the administrative process." *Id.*

The Kollars point to evidence presented at trial regarding derogatory comments about the Kollars' management of their properties made by personnel in the Code Enforcement Division. This evidence, however, does not support their claim that they did not receive an impartial hearing. Code enforcement officers, as suggested by the City, have an adversarial role in the investigation of complaints and the enforcement of building codes. Their role is much akin to that of a prosecutor. Thus, the evidence regarding comments made by Code Enforcement Division personnel does not support their claim of a biased tribunal.[5]

■ With respect to the hearing officer, the only evidence of bias noted by the Kollars is the testimony of the Kollars' property manager that, at the hearing, the hearing officer made a snide comment about the exorbitant rent the Kollars charged for one of their properties. An administrative hearing officer has a duty to remain impartial and refrain from making unnecessary comments or remarks. *Indiana Civil Rights Com'n*, 648 N.E.2d at 691. The hearing officer should be an impartial person whose conduct and remarks do not give the impression of partiality. *Id.* However, not all untoward remarks by a judge or a hearing officer constitute reversible error. *Id.* The remarks must harm the complaining party or interfere with the right to a fair trial. *Id.* Reversible error may also be established by demonstrating "by a valid and complete record that the alleged bias or prejudice stems from an extra-judicial source and results in an opinion on the merits on some basis other than what was learned through participation in the case." *Id.* (quoting *Matter of Sekerez*, 458 N.E.2d 229, 233 (Ind.1984), *cert. denied* 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116).

Here, even if we were to conclude that the hearing officer's comments about the amount of rent charged for the Kollars' property are an indication of partiality, the Kollars have

---

4. The City asserts that this issue was also waived by the Kollars' failure to properly raise it below. However, we conclude that the issue was properly raised because bias was specifically listed in the complaint. Record, p. 44.

5. Even if the bias of these officers could arguably have an effect on the impartiality of the process as a whole, our review of the comments that were made indicate, at best, a frustration with the Kollars' failure to property maintain their properties, rather than actual bias.

failed to demonstrate how the remark prevented them from having a fair hearing or prejudiced them in some other way. As such, the trial court's conclusion with respect to bias was not arbitrary, capricious, or an abuse of discretion. *See Uhlir,* 255 Ind. at 345–346, 264 N.E.2d at 314.

For the foregoing reasons we affirm the judgment of the trial court. Affirmed.

GARRARD and DARDEN, JJ., concur.