Mr. and Mrs. Robert N. ADAMS, Mr. and Mrs. Donald F. Tobin, Mr. and Mrs. Louis H. Till, Mr. Richard Fenton, Mr. and Mrs. Frank E. Simms, Sr., Mr. and Mrs. Charles Netterfield, and Bass-Leesburg Road Civic Association, Inc., Plaintiffs-Appellants,

v.

CITY OF FORT WAYNE, Northside Finance Corp., Northside Realty Corp., William J. Hefner, Ronald Huguenard, Jean Huguenard, and Fort Wayne City Plan Commission, Defendants-Appellees.

No. 3-879A229.

Court of Appeals of Indiana, Third District.

July 21, 1981.

Margaret M. Noteman, M. Robert Benson, Sowers & Benson, Fort Wayne, for plaintiffs-appellants.

Daniel K. Leininger, J. Philip Burt, John E. Hoffman, Fort Wayne City Atty., Fort Wayne, for defendants-appellees.

GARRARD, Judge.

The appellants (complainants) are essentially property owners who reside in the areas of, but not within, certain tracts of land which were rezoned and annexed by the City of Fort Wayne. They commenced suit for declaratory judgment, injunction and damages. The complaint was dismissed in response to the city's TR 12(B)(6) motion and complainants appeal.

### Annexation

After several parties filed a petition for voluntary annexation with the Common Council of Fort Wayne, the council passed Annexation Ordinance X–02–78 on July 25, 1978. The annexation covered sixty (60) acres of land, the major portion of which was owned by Northside Realty Corp.

In Count One of their complaint, the complainants attacked the 60 acre annexation as "illegal, invalid, and void," and sought a declaratory judgment to that effect, as well as an injunction prohibiting the city from further action on the annexation. The trial court dismissed this section of the complaint, asserting that the appellants lacked standing to challenge the annexation. We agree.

■ Initially, it should be clearly understood that the appellants are not challenging the annexation as statutory remonstrators.[1] However, we have held that remonstrators are not the *only* plaintiffs with standing to challenge an annexation. In *Montagano v. City of Elkhart* (1971), 149 Ind.App. 283, 271 N.E.2d 475, the court noted that in some cases, taxpayers of an annexing city may challenge an annexation under the Uniform Declaratory Judgment Act, provided the suit be brought on behalf of *all* the taxpayers:

> "As a *public* right the plaintiff together with the rest of the taxpayers which he represents would clearly have a right, but not an *unqualified* right."

271 N.E.2d at 479.

However, in this case it is apparent the complainants did not attempt to bring the action "in a representative capacity" on behalf of their fellow taxpayers.[2] Rather, they brought it only on behalf of themselves. As the court said in *Montagno, supra,* taxpayers in an *individual* capacity have no standing to challenge an annexation:

"... [I]t would seem that the 'right' of the taxpayers *as a personal right* would be insufficient to establish standing."
271 N.E.2d at 479.

■ Furthermore, a showing that a taxpayer owns property adjacent to a proposed annexation does not elevate his capacity to challenge the annexation beyond that shared by other taxpayers in the annexing community.

■ Therefore, the trial court properly concluded that the complainants in this action, suing only as individual taxpayers and adjoining landowners, had no standing to challenge the annexation.

■ Despite this, we believe the trial court should have given the complainants an opportunity to amend their complaint and bring it as a class action before it dismissed the case.

TR 17(A)(2) specifically provides:

> "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time after objection has been allowed for the real party in interest to ratify the action, or to be joined or substituted in the action."

As noted in W. Harvey, 2 Indiana Practice at 334:

> "Cases often will be found where an individual seeks relief in his or another's name upon a cause of action available only to a class. Failure to designate the action as a class action should not be fatal under Rule 17(A) allowing a reasonable time for naming the proper party."

So while we believe the trial court correctly determined that the complainants had no standing as *individual taxpayers* to challenge Fort Wayne's annexation, it should have permitted them an opportunity to amend their complaint and bring the action on behalf of all taxpayers. *See Bow-*

---

1. A remonstrance is the only mechanism provided by the legislature for challenging a city's annexation. IC 18–5–10–24.

2. Complainants' complaint contained only one reference to other taxpayers ("that plaintiffs, as well as other residents and taxpayers, have no adequate remedy at law ....”). It contained no recital that they were bringing suit on behalf of a class, and no allegation or showing that they were qualified to do so.

en v. Sonnenburg (1980), Ind.App., 411 N.E.2d 390.

Even so, we find the court's judgment should be affirmed. An examination of the complaint, confirmed by the complainants' argument on appeal, reveals that the only assertion of patent illegality is that the land in question allegedly does not have a resident population equal to three persons for each acre annexed, nor is it allegedly zoned for commercial, business or industrial uses or at least 60% subdivided.

The complainants rely upon *Pitts v. Mills* (1975), 165 Ind.App. 646, 333 N.E.2d 897 and the provisions of IC 18–5–10–32 in making this assertion. Their factual claim, however, even if true, is insufficient. In *Pitts* the First District held that this statute which applies to annexation by *towns* mandated that *any* annexation by a town meet the requirements therein set forth. The key language of the statute was its opening proviso:

"Town annexation shall not be sustained on appeal unless the following requirements have been met: . . . ."

While we believe the First District might have reached a different result in *Pitts* if it had construed the statute by limiting the requirements of § 32 to those persons and the statutory basis upon which they might remonstrate and appeal an annexation decision, we need not do so here. *Pitts* is clearly distinguishable since, as the First District recognized in its decision, § 32 applies to annexation by *towns*, while prior sections of the act (specifically IC 18–5–10–25) concern annexation by cities. 333 N.E.2d 905.

We therefore turn our attention to the sections regarding annexation by cities. § 20 permits the common council on its own initiation to annex contiguous territory. § 23 provides for annexation initiated by owners of the real estate sought to be annexed. § 24 then provides the basis and procedure for remonstrance, and § 25 governs the basis for judicial review of the decision of the common council.

IC 18–5–10–23, which applies to the present annexation, states:

"Whenever the owners of real estate situated outside the corporate boundaries of any city, but adjacent thereto, desire to have real estate annexed to the city, they may file with the common council of the city a petition bearing the signatures of fifty-one per cent [51%] of the owners of land in the territory sought to be annexed, requesting a special ordinance for the purpose of annexing the contiguous territory described in the petition. If the common council fails to pass the special ordinance within sixty [60] days from the date of the filing of the petition, the petitioners may file a duplicate copy of the petition in the circuit or superior courts of the county where the territory is situated or with the judge thereof in vacation and the petition shall state the reason why the annexation should, in justice, take place. Notice of the proceedings, by way of summons, shall be served upon the proper officers of the city to which the petition has been presented and the city shall become defendant in the cause and shall be required to appear and answer as in other cases. The court or judge thereof in vacation shall thereupon proceed to hear and determine the petition without the intervention of a jury and shall give judgment upon the question of annexation according to the evidence which either party may introduce. If the evidence establishes that:

(a) Essential municipal services and facilities are not available to the inhabitants of such territory; and

(b) The city is physically and financially able to provide municipal services to the area sought to be annexed; and

(c) The total resident population of the area sought to be annexed is equal to at least three [3] persons for each acre of land included within its boundaries; and

(d) At least one-eighth [⅛] of the aggregate external boundaries of the territory sought to be annexed coincide with the boundaries of the annexing city; the court shall order the proposed annexation to take place, notwithstanding the provisions of any other law of this state.

If, however, the evidence does not establish all four [4] of the foregoing factors, the court shall deny the petition to annex and dismiss the proceeding."

The statute thus does three things. It first provides that 51% of the owners of land in the territory sought to be annexed may file a petition for annexation. (IC 18–5–10–20 permits the city to annex the tract assuming it is contiguous to existing city boundaries.)

Secondly, the section provides a basis to appeal to the courts *if* the common council *fails* to pass the annexation ordinance.

Thirdly, the section provides that if the court finds the existence of the four enumerated qualifications it shall order that the annexation take place despite the failure of the common council to approve it.

The plain language of the statute applies consideration of the enumerated factors only when the common council refuses or fails to grant the annexation. The plain implication of the legislative scheme is that the council may choose to approve the annexation petitioned for by fifty-one per cent of the owners *regardless* of the existence of the enumerated factors. This interpretation is reinforced by the provisions of § 25 which postulates the filing of a valid remonstrance as the trigger for the judicial review that section provides.

Thus, as it appears that the requisite number of landowners petitioned for the annexation in question and their petition was approved by the common council, no illegality may be premised on the population density or land use character of the annexed area.

### The Rezoning

In 1974, Northside requested that the Common Council of Fort Wayne rezone 48.-64 acres of land from an R–A residential district to an M–Z general industrial district so they could use the land for a "truck sales lot." Both the City Plan Commission and its Site Committee recommended approval for the rezoning, subject to the condition that Northside agree to construct a barrier, or screen, to shield and protect adjoining property (much of which is owned by the complainants).[3] The common council accepted the recommendations and approved the rezoning.

In their complaint, the complainants contended that Northside failed to erect the screen as they had promised to do. They further asserted that "the Northside Finance Corp., William I. Hefner, and/or other officers or agents of said corporation will seek in the near future an occupancy permit for building upon said real estate." In an effort to forestall that from happening until Northside builds the wall, the complainants initiated this suit. In Count Two of their complaint, they sought an injunction prohibiting Northside from *requesting* an occupancy permit until such time as the wall is constructed, and prohibiting the common council from issuing a permit until the condition is fulfilled.

The trial court properly dismissed this count of the complaint. An injunction will not be issued where the applicant cannot demonstrate "the present existence of an actual threat that the action sought to be enjoined will come about. Injunctive relief may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *J. D. Pflaumer v. U.S. Dept. of Justice* (1978), 450 F.Supp. 1125 at 1131. We do not believe the circumstances outlined in the complaint even potentially establish "the present existence of an actual threat." They allege *only* that Northside would soon be requesting an occupancy permit. There was no contention that the council was at that point considering issuing such a permit, or that it would do so after such consideration. To issue an injunction at such a preliminary stage, with the future course of a request for an occupancy permit so speculative, would be entirely premature. For example, *see Dunlap v. City of Southfield* (1974), 54 Mich.App. 398, 221 N.W.2d 237, where the court said:

---

**3.** As the site committee phrased the requirement, "a seven (7') foot landscape buffer must be installed at the rear of the site prior to issuance of Certificate of Occupancy."

"It is well settled that an injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural. Since the City Council had taken no action on the site plan, any threatened injury or harm due to traffic or invasion of privacy, etc., at that point in time was sheer speculation and conjecture. No decision having been made, the complaint that the site plan violated city zoning ordinances was equally premature."

221 N.W.2d at 240. Likewise, in our case, apprehension that the city council, if an occupancy permit is requested, will choose to ignore a condition previously attached to a zoning ordinance and issue the permit, is "sheer speculation and conjecture." *Also see American Coal Min. Co. v. Special Coal and Food Com'n* (7th Cir. 1920), 268 F. 563; *Fisher v. Coleman* (1979), 486 F.Supp. 311; *J. D. Pflaumer, supra; Crimmins v. American Stock Exchange, Inc.* (1972), 346 F.Supp. 1256; *Hernandez v. Board of Com'rs. of Hillsborough Co.* (1934), 114 Fla. 219, 153 So. 790; *McDowell v. Judges Ex Officio* (1975), 235 Ga. 364, 219 S.E.2d 713; *Roth-Adam Fuel Co. v. Pollution Control Board* (1973), 10 Ill.App.3d 756, 295 N.E.2d 321; and *Indiana Alcoholic Beverage Com'n. v. McShane* (1976), 170 Ind.App. 586, 354 N.E.2d 259.

▮▮▮▮ Perhaps of equal importance is the observation that courts should be extremely reluctant to interfere with a governmental body before it acts. There is a marked judicial preference to review such actions only after they are completed. It would be inappropriate for the judiciary to obstruct the common council, cloaked as it is with delegated legislative authority, in the performance of its duties, save in the most exceptional of circumstances, and we perceive no such circumstances from the complainants' complaint. For example, in *Shellburne, Inc. v. Buck* (1968), 43 Del.Ch. 534, 240 A.2d 757, where the plaintiffs sought an injunction to prevent the New Castle County Council from entertaining any ordinance to rezone their land, the court dismissed the complaint for failure to state a claim, noting:

"The powers which the County Council proposes to exercise are legislative in character, as indeed all zoning is. The general rule is that a Court of Equity, with some possible exceptions not material here, will not interfere with or restrain proposed, but as yet uncommitted, discretionary acts of a legislative body. To do so would exceed the bounds which separate judicial from legislative authority. *New Orleans Water Works Co. v. City of New Orleans*, 164 U.S. 471, 17 S.Ct. 161, 41 L.Ed. 518.

\* \* \* \* \* \*

In any event, this is not a rare and exceptional case which would justify court interference in advance with the exercise of the power of legislation. The proper and normal method of attacking an invalid exercise of legislative power is to await passage and then seek the enjoining of its enforcement."

240 A.2d at 758.

Furthermore, in *Board, etc. v. Jewett* (1915), 184 Ind. 63, 110 N.E. 553, our Supreme Court said:

"Municipal corporations are instrumentalities of the State for the more convenient administration of local affairs, and for that purpose are invested with certain legislative power. In the exercise of that power, upon the subjects submitted to their jurisdiction, they are as much beyond judicial interference as the legislature of the state. The courts cannot in the one case forbid the passage of a law nor in the other the passage of a resolution, order, or ordinance."

184 Ind. at 71, 110 N.E. 553.

In *State ex rel. Michigan City Plan Com'n. v. LaPorte Sup. Ct. No. 1* (1973), 260 Ind. 587, 297 N.E.2d 814, the Common Council of Michigan City was *considering* the enactment of an amendment to the zoning ordinance. Several landowners filed suit for an injunction against adoption of the proposed amendment. In holding that an injunction would be improper, our Supreme Court said:

"Our trial courts do, of course, have jurisdiction to entertain suits challenging the validity of an amendment to a zoning ordinance, after it has been adopted, and in a proper case to enjoin the amendment's enforcement.

\* \* \* \* \* \*

Courts of other jurisdictions have considered the specific issue presented here of whether a court exercising its equitable powers may enjoin the enactment of amendments to local zoning ordinances, and they too have held that an injunction would not issue to restrain the adoption of an amendment to a local zoning ordinance, even if such ordinance were unconstitutional or passed without following prescribed procedures.

\* \* \* \* \* \*

The general rule has at its base, the doctrine of separation of powers. We agree with it, and as applied here, it serves to deny to respondent the authority to issue the restraining order set out above."

297 N.E.2d at 815–16. We apply the same reasoning to the present case, and conclude injunctive relief prohibiting the common council from considering the issuance of an occupancy permit would be inappropriate.[4] *See also Hernandez v. Bd. of Com'rs. of Hillsborough Co., supra* ; and *Indiana Alcoholic Beverage Com'n. v. McShane* (1976), 170 Ind.App. 586, 354 N.E.2d 259.

### Other Claims

■ Paragraph IV of complainants' complaint sought damages asserting that Bass-Leesburg Road Civic Association, Inc. was misled by Northside Finance Corp. to forego its rights to object to the rezoning by representations that the intended use of the real estate was to be a truck sales lot, rather than an industrial park.

Complainants' argument appears to assert that by desiring to use the land for an industrial park the defendants have breached a condition of the rezoning. No such condition appears in the record, nor is it asserted that an industrial park is not permitted in the area as it was rezoned.

Moreover, it does not appear that any claim of fraud has been stated since the allegations do not assert the misrepresentation of any existing facts. *Blaising v. Mills* (1978), Ind.App., 374 N.E.2d 1166; *Martin v. Grutka* (1972), 151 Ind.App. 167, 278 N.E.2d 586.

We confess some uncertainty as to the precise nature of the complainants' fourth claim due in large part to its brief treatment in complainants' argument. We can say with conviction, however, that complainants have not discharged their burden of demonstrating harmful error.

■ Complainants' final argument concerns the failure of the trial court to enter a stay of activity under the zoning ordinance while the annexation was under challenge. While the question is mooted by our decision concerning the annexation, it would fail in any event because, contrary to complainants' assertion, the city's authority to zone is not confined to its municipal boundary. *See* IC 18–7–5–34.

Affirmed.

HOFFMAN, P. J., and STATON, J., concur.

4. As Judge Buchanan wrote, in a different context, in *Downing v. Bd. of Zoning Appeals* (1971), 149 Ind.App. 687, 274 N.E.2d 542, 545:
"No harm can come to Downing until the Board's decision is finalized. If it is unlawful, then it may be reviewed. Until such time, however, seeking review of the Board's preliminary approval is somewhat like crying 'Wolf!' when that devourer of sheep is only rumored to be in the neighborhood."