Edward BROWN, Appellant–Plaintiff,

v.

The **ANDERSON BOARD OF PUBLIC SAFETY** and David Eicks, Anderson Building Commissioner, Appellees–Defendants.

No. 48A02–0205–CV–356.

Court of Appeals of Indiana.

Sept. 30, 2002.

Publication Ordered Oct. 23, 2002.

Andrew C. Krull, Dennis K. Frick, Indiana Legal Services, Indianapolis, for Appellant.

Robert W. Rock, Anderson, for Appellees.

## OPINION

BARNES, J.

### Case Summary

Edward Brown appeals the trial court's affirmation of an order to remove or demolish the house located on his property. We affirm.

### Issue

██ We address one issue, which we restate as whether the trial court properly affirmed the demolition order.[1]

### Facts

On November 19, 1996, Walter Williams, an inspector from the Anderson Building Commissioner's office, inspected a home in Anderson. In November or December 1996, the Building Commissioner, David Eicks, notified Brown's sister, who owned the property at the time, of the home's numerous deficiencies and asked her to contact his office within thirty days to discuss repairing it. Brown's sister did not respond, Eicks issued a demolition order, and the Anderson Board of Public Safety ("the board") affirmed Eicks' order.

On December 2, 1997, Williams inspected the house again and the condition of the house had not changed since the 1996 inspection. On December 9, 1997, Brown's sister gave him the property as a birthday gift via a quitclaim deed. Brown, who is disabled and cannot read, receives approximately $550.00 per month in disability benefits and had rented the property from his sister since 1995.

On February 20, 1998, Eicks notified Brown of the hazardous conditions and issued a second demolition order. The notice informed Brown that a hearing on the matter was scheduled for March 5, 1998. Following the hearing, the board affirmed the demolition order.

On May 8, 1998, Brown filed a complaint with the trial court seeking judicial review of the demolition order. On October 21, 1998, Eicks and the board filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The trial

---

1. Brown also argues that the Building Commissioner breached an oral agreement when he failed to remove the demolition order after Brown presented an estimate covering exterior repairs and indicated that he had obtained financing. However, Brown did not specifically raise this issue in his complaint or at trial. "A party may not raise an issue on appeal that was not raised in the trial court unless the opposing party has unequivocal notice of this issue." *Lusk v. Swanson,* 753 N.E.2d 748, 753 n. 6 (Ind.Ct.App.2001). The Building Commissioner did not have such notice, and this issue is waived for our consideration. *See id.*

court denied the motion. Eicks and the board appealed the trial court's decision, which we affirmed in part and reversed in part in a memorandum decision. *See City of Anderson et al., v. Brown,* 48A02–9906–CV–396, 726 N.E.2d 901 (Ind.Ct.App. Mar. 24, 2000). On August 20, 2001, the trial court held a hearing on the matter and later affirmed the demolition order. On October 2, 2001, Brown filed a motion to correct error, which the trial court denied. Brown now appeals.

### Analysis

■ The trial court was required to review the demolition order under a de novo standard of review. Ind.Code § 36–7–9–8(c). Under de novo review, a trial court may, "to a limited extent, weigh the evidence supporting the finding of fact by the enforcement authority. The court may negate the finding only if, based upon the evidence as a whole, the finding of fact was arbitrary, capricious, an abuse of discretion, unsupported by the evidence, or in excess of statutory authority." *Kopinski v. Health & Hosp. Corp. of Marion County,* 766 N.E.2d 454, 454–55 (Ind.Ct.App. 2002) (citing *Kollar v. Civil City of South Bend,* 695 N.E.2d 616, 619 (Ind.Ct.App. 1998), *trans. denied* (1999)).[2] The trial court may not substitute its judgment for that of the board; rather, the facts should be determined only one time. *See id.* at 455. Brown, the party seeking to overturn an administrative order, had the burden of proof at the trial. *See id.* In reviewing the trial court's decision, we must determine whether it was arbitrary, capricious, an abuse of discretion, unsupported by the evidence, or in excess of statutory authority. *Id.*

Indiana Code Section 36–7–9–5(a) provides in part, "The ordered action must be reasonably related to the condition of the unsafe premises and the nature and use of nearby properties." We have noted that "where a building can be reasonably repaired, it *may* be improper to order demolition of the property." *409 Land Trust v. City of South Bend,* 709 N.E.2d 348, 350 (Ind.Ct.App.1999) (recognizing that when the owner failed to make required repairs after being given ample opportunity to make them, it was proper to affirm the demolition order) (emphasis added).

■ Brown argues that Eicks and the board did not establish that the house was unsafe because they "presented no facts to show any imminent danger to the public or adjacent property owners." Appellant's Br. p. 10. Again, Brown had the burden of proof at trial, not the City. *See Kopinski,* 766 N.E.2d at 455. Regardless, Indiana Code Section 36–7–9–4(a) describes "unsafe premises" as a building or structure, or any part of a building or structure, that is:

(1) in an impaired structural condition that makes it unsafe to a person or property;

(2) a fire hazard;

(3) a hazard to the public health;

(4) a public nuisance;

(5) dangerous to a person or property because of a violation of a statute or ordinance concerning building condition or maintenance; or

(6) vacant and not maintained in a manner that would allow human habitation, occupancy, or use under the requirements of a statute or an ordinance[.]

Williams testified that his 1996 inspection revealed that the exterior of the house was deteriorating, the foundation needed

---

**2.** The *Kollar* court acknowledged "that the term 'de novo' in statutes providing for judicial review of administrative orders does not authorize a trial court to substitute its judgment for that of the agency below." *Kollar,* 695 N.E.2d at 619.

to be repaired, the asbestos siding was chipped and cracked, the roof needed major repairs, many of the house's gutters were missing, the overhang had completely deteriorated in places, the windows needed to be replaced, the chimney had pulled about six inches away from the house and the mortar between the bricks had washed away, the exterior doors did not have locks, the interior doors did not have door knobs, the plaster and lath throughout the house had been damaged, the stairways were unsafe, water damage was causing the floors to deteriorate, and there was miscellaneous debris throughout the house and yard. Additional evidence indicated that the front porch was deteriorating and that the electrical, plumbing, and HVAC services were inadequate.

Williams also testified that since his 1996 inspection the only repairs that Brown made was the removal of the chimney, the porch roof, the asbestos siding, and most of the interior doors. Eicks testified that the house was unsafe because it was in violation of state and local ordinances, it was unsanitary and unfit for human habitation, and it was a fire hazard. This is certainly sufficient evidence to establish that the house was unsafe as described in Indiana Code Section 36–7–9–4.

Brown also argues that he was not given the opportunity to repair the house and relies entirely on *Kopinski*, 766 N.E.2d at 456, in which the evidence presented to the trial court was limited to a dangerous condition caused by a fire that occurred on May 10, 2001 and Kopinski was ordered to demolish the premises by July 25, 2001. We concluded that the trial court abused its discretion by failing to give Kopinski an opportunity to repair the premises prior to being ordered to demolish it. *Id.* Unlike the relatively short time frame that we addressed in *Kopinski*, Brown had several years to repair the premises. Here, the

property was inspected in 1996 and a demolition order was issued in 1996 or 1997. The property was inspected again in 1997, and another demolition order was issued in 1998. The trial court did not affirm the demolition order until August 2001. Although he had the opportunity, Brown has done little to repair or improve the condition of the property.

■ Because Brown had ample opportunity to make the required repairs and did not, we are guided by our reasoning in *Kollar*, 695 N.E.2d at 622, in which we concluded that the fact that the property can be repaired is not the dispositive consideration in reviewing a demolition order. Because in theory any building can be repaired, "an equally important consideration is whether the building *will* be repaired." *Id.* "The more relevant question in a case such as this is whether the option of repair will effectively correct the condition considered to be a danger to the public." *Id.*

We agree with Brown that the property *can* be repaired. We are doubtful, however, that allowing Brown additional time to make the necessary repairs will result in the correction of the dangerous conditions. Although Brown refers to an earlier estimate from a contractor, this estimate covered only the exterior repairs. Additionally, Brown waited until the day of the trial to provide a more complete estimate, which still did not include the cost of repairing the plumbing. Brown also testified that two years before the trial he had secured financing to pay for the repairs. Brown did not indicate, however, whether he was still eligible for such financing. Moreover, Brown testified that the bank would not finance the repairs until the demolition order was removed. In response, Eicks testified that although he works with homeowners to develop a repair schedule, a demolition order will not

be removed until the required repairs are completed. Based on this evidence, we cannot conclude that the trial court's decision was arbitrary, capricious, an abuse of discretion, unsupported by the evidence, or in excess of statutory authority. *See Kopinski,* 766 N.E.2d at 455.

### Conclusion

Because the building was unsafe and Brown had ample opportunity to make the required repairs and did not do so, the trial court properly affirmed the demolition order. We affirm.

Affirmed.

BAKER, J., and VAIDIK, J., concur.

### ORDER

This Court having heretofore handed down its opinion in this appeal on September 30, 2002, marked *Memorandum Decision, Not for Publication;*

Come now the Appellees, by counsel, and file herein Motion to Publish Memorandum Decision, alleging therein that said decision should be published for the reason that said decision clarifies the law as it relates to unsafe buildings and the enforcement of building standards; that the statute pertaining to unsafe buildings, I.C. 36–7–9 *et seq.,* has few appellate decisions which have interpreted and applied it; that publication will make members of the bar and the public aware that if an unsafe property is not repaired in a reasonable time period, the property will be demised as an unsafe structure.

The Court having examined said Motion, having reviewed its opinion in this appeal, and being duly advised, now finds that said Motion to Publish should be granted.

IT IS THEREFORE ORDERED that the Appellees' Motion to Publish Memorandum Decision is granted and this Court's opinion heretofore handed down in this cause on September 30, 2002, as a Memorandum Decision, Not for Publication, is now ordered published.