Daniel Lee GROFF, Linda Groff, Maurice Groff, and Ruth Groff, Appellants–Plaintiffs,

v.

CITY OF BUTLER, Appellee–Defendant.

No. 17A03–0303–CV–78.

Court of Appeals of Indiana.

Aug. 29, 2003.

---

3. This absence of prejudice also renders Saunders' ineffective assistance of appellate counsel claim moot.

Jason M. Kuchmay, Beckman Lawson, LLP, Fort Wayne, IN, Attorney for Appellants.

Gerald M. McNerney, Butler, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

After the Unsafe Building Committee for the City of Butler ("the City") ordered Daniel, Linda, and Maurice Groff ("the Groffs") to demolish a property due to its unsafe condition, the Groffs appealed the demolition order to the DeKalb Circuit Court. During those proceedings, the City filed a counterclaim against the Groffs requesting that the trial court issue an injunction prohibiting the Groffs "from further and continued violation of the Unsafe Building Law." The trial court affirmed the demolition order and issued the requested injunction against the Groffs. The Groffs appeal raising several issues, which we consolidate and restate as:

I.    Whether the Groffs had adequate notice of the hearing held on January 15, 2003;

II.   Whether the allegations in the City's counterclaim were properly deemed admitted;

III.  Whether the evidence was sufficient to support the City's demolition order;

IV.   Whether the evidence was sufficient to warrant the injunctive relief entered against the Groffs; and,

V.    Whether the trial court abused its discretion when it ordered the Groffs to pay the City's attorney fees.

Concluding that the trial court abused its discretion when it awarded attorney fees to the City, but that the Groffs have failed to present any argument sufficient to require reversal of the other issues raised in this appeal, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural History

The Groffs own several properties in Butler, Indiana. In August 2001, a city water department employee entered the basement of one of the Groffs' properties located at 218 West Oak Street for the purpose of shutting off the water. After observing the condition of the basement, he spoke with Amy Schweitzer ("Schweitzer"), the Butler City Planner, to report his observation that there was a half of inch of water, possibly waste water, on the basement floor, a hose pumping raw sewage into the yard, and a significant amount of trash outside the house. Tr. p. 10.

Schweitzer then requested permission to inspect the premises, but said permission was not granted; therefore, she obtained an inspection warrant. An inspector was hired to inspect the property on behalf of the City, and he prepared a written report detailing several problems with the house including a deteriorated foundation, deteriorated walls, floors, and gutters, missing siding, numerous problems with the roof, faulty wiring, an open sewer line, signs of sewage on the floor, the presence of E Coli bacteria in the house, and sewage and E Coli in the yard. Ex. Vol., Defendant's Ex. 1. The estimated cost of repair was $33,950, and the inspector recommended demolition given his opinion that repairing the house would not be cost effective. *Id.*

On April 26, 2002, the Groffs were ordered to demolish the property, and a hearing was scheduled on that order for May 13, 2002, before the City's Unsafe Building Committee and Hearing Authority ("the Committee"). Ex. Vol., Def.'s Ex. 2. Maurice Groff managed the property and was present at the hearing. Maurice had power of attorney for his son and daughter-in-law, Daniel and Linda Groff, the owners of the property. Groff indicated that he intended to make all required repairs to the Oak Street property and had discussed the matter with a contractor. However, Groff could not give the Committee a specific time frame within which the repairs would be made, but indicated that it could take up to 120 days. Groff was then asked to submit a written plan of action for the property addressing all concerns raised in the inspection report at a second hearing to be held on May 28, 2002. Ex. Vol., Def.'s Ex. 3.

At the May 28th hearing, Groff failed to submit the requested plan of action. Groff indicated that he intended to hire a contractor who had given him verbal estimates for the property, but that the con-

tractor had not had the opportunity to prepare a written estimate and was unable to attend the hearing. He also stated that the contractor estimated that it would take 120 days to complete the repairs. Groff was asked when he would have the opportunity to obtain a written estimate, and Groff indicated that he was unwilling to do so or to attend any other hearings. The Committee then affirmed the order to demolish the Oak Street property. Ex. Vol., Def.'s Ex. 4.

On June 5, 2002, the Groffs, by counsel, filed an appeal of the Committee's decision in the Dekalb Circuit Court. On June 28, 2002, the City filed a counterclaim against the Groffs alleging that the Groffs, "either individually or collectively," own five properties, including the Oak Street property, that "have been found to violate" the Unsafe Building Law, and "have been or are now a nuisance." Appellant's App. pp. 116–17. The City therefore alleged that:

5. That the City of Butler has no adequate remedy at law in that unless restrained or enjoined the Groffs will continue to maintain and lease unsafe buildings within the City of Butler, which buildings, in addition to being in violation of the Unsafe Building Law, constitute a nuisance to all tenants and surrounding landowners and neighbors.

6. That the laws of the State of Indiana allow equity to enjoin the continuing violations of statutes and the Unsafe Building Law by the [Groffs].

Appellant's App. p. 117. Therefore, the City requested that the trial court issue an injunction against the Groffs from "further and continued violation of the Unsafe Building Law of the State of Indiana, and further prohibit the creation or maintenance of nuisances on their property as they have in the past[.]" *Id.*

At the hearing held on January 15, 2003,[1] although they had been previously represented by counsel, the Groffs proceeded pro se. During the hearing, the City moved to have the allegations in the counterclaim deemed admitted because the Groffs had failed to file a response. The trial court granted that motion. The Groffs did not present any evidence at the hearing. On January 31, 2003, the trial court affirmed the Committee's demolition order. Ruling on the City's counterclaim, the trial court entered an injunction against the Groffs prohibiting them from

> maintaining substandard housing which violates the Unsafe Building Laws of the State of Indiana and/or the City of Butler and that they inspect all of their properties and bring them into compliance with said laws immediately and that any further violations of the Unsafe Building Laws shall be punishable by contempt of court.

Appellant's App. p. 8. Finally, the trial court ordered the Groffs to pay the City's attorney fees and costs in the amount of $7,449.53. The Groffs now appeal.

## I. Notice

■ The Groffs argue that they did not receive adequate notice of the January 15, 2003 hearing, and therefore, the trial court's January 31, 2003 order should be vacated. On August 23, 2002, the City requested a hearing date stating that the City "hereby requests the Court schedule this matter for hearing at its earliest convenience." Appellant's App. p. 123. On that same date, the trial court granted the request and scheduled "this matter" for a hearing on January 15, 2003. Appellant's App. p. 126. In their brief, the Groffs

admit that they "received *a notice*, and were aware there was *a hearing*," but contend that the notice was insufficient. Br. of Appellant at 14 (emphasis in original). Specifically, they argue that they were "confused and unaware of the nature of the [h]earing" because the City's request for a hearing "did not indicate that the [h]earing would be a trial on the merits of the [c]omplaint and [c]ounterclaim." *Id.*

In support of their argument, the Groffs rely on Maurice Groff's statements to the trial court that he was confused as to what "we're actually here for." Tr. p. 32. Also, after the trial court asked Mr. Groff if he wanted to present any evidence to the court, Mr. Groff replied:

> Well, I'm, I'm kind of confused on the matter. Um, I really thought we were here to determine whether the place was to be, um, removed, torn down or whatever. That's what I was under the impression that's what we were here today for to make a judgment on whether it will be demolished or taken away. That was my impression.

Tr. p. 6.

It is apparent from Mr. Groff's own statement to the trial court that the Groffs were aware that the purpose of the hearing was to address their appeal of the Committee's demolition order for the Oak Street property. The only other matter pending before the court was the City's counterclaim requesting the injunction, which related not only to the Oak Street property, but also to four other properties owned by the Groffs. Mr. Groff admitted that the Groffs had received notice of the counterclaim and had read it. Tr. pp. 4–5. Therefore, the Groffs clearly had notice of the issues pleaded and pending before the

---

1. Only Maurice Groff was present at the hearing. Maurice Groff was authorized to act on behalf of Daniel and Linda Groff, which he did. However, he did not have a power of attorney for Ruth Groff, his wife, who was later added as an indispensable party; therefore, Ruth Groff failed to appear and was defaulted. Appellant's App. p. 4.

court and the City's request for a hearing "on this matter" was adequate notice that the hearing would constitute a trial on the merits of both the Groffs' complaint and the City's counterclaim.

## II. Admission of Allegations in the Counterclaim

Next, the Groffs argue that the City's motion at the January 15, 2003 hearing to have the allegations in the counterclaim deemed admitted was inadequate because the City did not file a written motion. At the hearing, the City moved to have the allegations in its counterclaim deemed admitted because the Groffs failed to file a responsive pleading. Pursuant to Indiana Trial Rule 8(D), "[a]verments in a pleading to which a responsive pleading is required, except those pertaining to amount of damages, are admitted when not denied in the responsive pleading."

The Groffs contend that the City moved to have the allegations in their counterclaim deemed admitted "prior to the proceeding" on January 15, 2003, and pursuant to Trial Rule 7(B) that motion was required to be in writing. Br. of Appellant at 8–9. Rule 7(B) provides: "[u]nless made during a hearing or trial, or otherwise ordered by the court, an application to the court for an order shall be made by written motion." We disagree with the Groffs' argument that the City's motion was made "prior to the proceeding." The City made its motion during the scheduled hearing time on January 15, 2003. Also, before the City made its motion, Maurice Groff had been sworn in and had testified regarding his power of attorney for Daniel and Linda Groff. Finally, we note that Maurice Groff admitted that the Groffs had received notice of the counterclaim. When the trial court asked Mr. Groff if he wanted to respond to the City's motion, he replied, "No I, I guess not." Tr. p. 6. The City was therefore not required to file a written motion, and pursuant to Trial Rule 8(D), the allegations in the City's counterclaim were properly deemed admitted.

## III. The Demolition Order

■ Thirdly, the Groffs argue that the trial court erred when it affirmed the Committee's demolition order and failed to provide the Groffs with an opportunity to repair the Oak Street property. Relying on their argument with regard to notice, which is discussed above, the Groffs contend that

[h]ad the Groffs been aware that the hearing was a trial on the merits, they likely could have provided evidence of the repairs they intended to make to the Oak Street property. Then, any order requiring immediate demolition of the property would have been unreasonable, and in error.

Br. of Appellant at 15. In support of their argument, the Groffs rely on the testimony of the City's inspector who stated that any building could be repaired if an individual was willing and had the means to do so. Tr. p. 59.

■ A trial court is required to review a demolition order under a de novo standard of review. *Brown v. Anderson Bd. of Pub. Safety*, 777 N.E.2d 1106, 1108 (Ind.Ct.App.2002), *trans. denied* (citing Ind.Code § 36–7–9–8(c) (1997)). Under a de novo review, the trial court may, to a limited extent, weigh the evidence supporting the enforcement authority's findings of fact. *Id.* " 'The court may negate the finding only if, based upon the evidence as a whole, the finding of fact was arbitrary, capricious, an abuse of discretion, unsupported by the evidence, or in excess of statutory authority.' " *Id.* (quoting *Kopinski v. Health & Hosp. Corp. of Marion County*, 766 N.E.2d 454, 454–55 (Ind.Ct. App.2002) (citing *Kollar v. Civil City of South Bend*, 695 N.E.2d 616, 619 (Ind.Ct. App.1998), *trans. denied* )). "The trial

court may not substitute its judgment for that of the [Committee]; rather, the facts should be determined only at one time." *Id.* When we review the trial court's decision, we are required to determine whether its decision was arbitrary, capricious, an abuse of discretion, unsupported by the evidence, or in excess of statutory authority. *Id.* As the party seeking reversal of the administrative order, the Groffs had the burden of proof at trial. *See id.*

Indiana Code section 36–7–9–4 describes unsafe buildings and premises, providing in pertinent part:

(a) For the purposes of this chapter, a building or structure, or any part of a building or structure, that is:

(1) in an impaired structural condition that makes it unsafe to a person or property;

(2) is a fire hazard;

(3) a hazard to the public health;

(4) a public nuisance;

(5) dangerous to a person or property because of a violation of a statute or ordinance concerning building condition or maintenance; or

(6) vacant and not maintained in a manner that would allow human habitation, occupancy, or use under the requirements of a statute or an ordinance;

is considered an unsafe building.[2]

Ind.Code § 36–7–9–4 (1997). If a determination has been made that a building or premises is unsafe, the enforcement authority may issue an order requiring action, including repair or removal of an unsafe building, however, the "ordered action must be reasonably related to the condition of the unsafe premises and the nature and use of nearby properties."

Ind.Code § 36–7–9–5 (1997). "Where a building can be reasonably repaired, it may be improper to order demolition of the property." *Brown,* 777 N.E.2d at 1108 (quoting *409 Land Trust v. City of South Bend,* 709 N.E.2d 348, 350 (Ind.Ct.App. 1999), *trans. denied* ).

In *Brown,* a 1996 inspection revealed several problems with Brown's property including deterioration of the front porch and exterior of the house, a faulty roof and foundation, chipped and cracked asbestos siding, problems with a chimney that had pulled away from the house, unsafe stairways, floors that were deteriorating due to water damage, and damaged plaster and lath throughout the house. *Id.* at 1108–09. In 1998, the enforcement authority ordered Brown to demolish the house, and Brown appealed that order to the Madison Superior Court, which held a hearing in 2001. *Id.* at 1107–08. The testimony presented at the hearing revealed that Brown had done little to repair or improve the condition of the property since the initial inspection in 1996; therefore, the trial court affirmed the demolition order. *Id.* at 1109.

On appeal, we observed that

the fact that a property can be repaired is not the dispositive consideration in reviewing a demolition order. Because in theory any building can be repaired, "an equally important consideration is whether the building will be repaired." "The more relevant question in a case such as this is whether the option of repair will effectively correct the condition considered to be a danger to the public."

*Id.* (quoting *Kollar,* 695 N.E.2d at 622). Although we agreed with Brown that the

---

**2.** The City's Unsafe Building Law is substantially more specific than the Indiana law; however, it does not conflict with Indiana's law, and it simply provides detailed descriptions of the conditions which render a building unsafe. *See* Ex. Vol., Def.'s Ex. 5.

property could be repaired, we affirmed the demolition order, stating, "we are doubtful, however, that allowing Brown additional time to make the necessary repairs will result in the correction of the dangerous conditions." *Id.* *See also Kollar*, 695 N.E.2d at 622 ("Given the extensive history of disrepair for this property, we conclude that demolition was a reasonable option even in light of the possibility of repair.").

In this case, the Oak Street property was inspected in August 2001. That inspection revealed numerous problems including a deteriorated foundation, deteriorated walls, floors, and gutters, missing siding, numerous problems with the roof, faulty wiring, an open sewer line, signs of sewage on the floor, the presence of E Coli bacteria in the house, and sewage and E Coli in the yard. Ex. Vol., Def.'s Ex. 1. The estimated cost of repair was $33,950, and the inspector recommended demolition given his opinion that repairing the house would not be cost effective. *Id.* At the Committee's hearing on the demolition order, the Committee asked the Groffs to prepare a written plan for repair of the property. The Groffs failed to do so, and in fact, indicated their unwillingness to do so; therefore, the Committee affirmed the demolition order. Ex. Vol., Def.'s Ex. 4.

The trial court held a hearing on the Groffs' appeal of the demolition order on January 15, 2003. At that hearing, Schweitzer, the City Planner, testified that the property was in the same condition that it was in when it was originally inspected in August 2001. Tr. p. 31. The inspector testified that when he walked around the property in 2002, he observed that the retaining wall, which "holds the dirt back that supports the chimney," had collapsed. Tr. p. 58. Also, Lee Impton, a nearby property owner, testified that he has not observed any repair work performed on the property for the last ten years. Tr. p. 75. The Groffs failed to present any evidence at the hearing. Therefore, similar to the circumstances in *Brown* and *Kollar*, although we agree with the Groffs that the property could possibly be repaired, no evidence was presented that the Groffs are willing or intend to repair the property. Given the unsafe and unsanitary condition of the property and the Groffs' failure to present any evidence which would demonstrate a willingness or intention to repair the property, we conclude that the trial court's order affirming the City's demolition order was not arbitrary, capricious, an abuse of discretion, or in excess of statutory authority.

## IV. The Injunction

■ Fourth, the Groffs argue that because the evidence was insufficient to establish that the Groffs' five properties are nuisances, "the trial court's granting of an injunction is without basis in fact, and should be reversed." Br. of Appellant at 11. Also, the Groffs contend that the "injunction goes beyond the scope of the [p]roperties at issue in this litigation and is too broad." *Id.*

■ Initially, we observe that injunctions are extraordinary remedies that should be granted only with caution. *Boczar v. Meridian St. Found.*, 749 N.E.2d 87, 94 (Ind.Ct.App.2001) (citing *Day v. Ryan*, 560 N.E.2d 77, 83 (Ind.Ct.App.1990)). "An injunction should be narrowly tailored, so that its scope is never 'more extensive than is reasonably necessary to protect the interests of the party in whose favor it is granted.'" *Id.* (quoting *Day*, 560 N.E.2d at 83 (quoting *F.W. Means & Co. v. Carstens*, 428 N.E.2d 251, 260 (Ind.Ct.App. 1981))). Furthermore, an injunction should not be so broad as to prevent the enjoined party from exercising his rights. *Id.*

In its counterclaim, the City sought an injunction against the Groffs due to their alleged violation of the City's Unsafe Building Law pursuant to Indiana Code section 36–1–6–4,[3] which provides that:

A municipal corporation may bring a civil action to enjoin any person from:

(1) violating an ordinance regulating or prohibiting a condition or use of property; or

(2) engaging in conduct without a license if an ordinance requires a license to engage in the conduct.

Ind.Code § 36–1–6–4 (1997). In the counterclaim, the City specifically alleged that the Groffs own five properties which have been found to violate the City's Unsafe Building Law, and that all five properties "have been or are now a nuisance" as that term is defined under Indiana law. Appellant's App. pp. 116–17. The City also alleged that unless the Groffs were restrained or enjoined from doing so, they would continue to maintain and lease the unsafe premises located within the City. *Id.*

First, the Groffs contend that the evidence was insufficient to establish that the properties listed in the counterclaim are nuisances. Nuisance is defined as:

Whatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property[.]

Ind.Code § 32–30–6–6 (2002).

In addition to the allegations in the counterclaim, which were properly deemed admitted at the January 15, 2003 hearing, the inspector testified that faulty electrical wiring in the Oak Street property presented a potential fire hazard. Tr. p. 55. Further, he stated that in the buildings owned and/or managed by the Groffs that he has inspected, faulty wiring is a condition he typically encounters. *Id.* Evidence was also presented that sewage was being pumped from the house on the Oak Street property out into the yard.

The City offered the testimony of two individuals who own property near the Oak Street property. Linda Everetts, who owns the property next door to the Groffs' property, testified that the deplorable condition of the Groffs' property presents a health and safety hazard to her husband and herself and has affected their use of their property. Tr. pp. 68–69. Lee Impton, who owns the property three houses east of the Oak Street property, testified to its deplorable condition and his belief that the condition of that property negatively affects the property value of his own home. Tr. p. 76. Schweitzer, the City Planner, testified that 1) all of the properties listed in the counterclaim had been inspected; 2) none of those properties when inspected were in compliance with the City Code; and 3) the City has received complaints from residents and tenants with regard to other properties owned by the Groffs, but that the City has not had the opportunity or finances to inspect those properties. Tr. pp. 79–80.

This evidence is sufficient to establish that the properties at issue constitute nui-

---

**3.** We note that the City did not specifically request an injunction pursuant to Indiana Code section 32–30–6–7(b)(2), which provides that "[a] civil action to abate or enjoin a nuisance may also be brought by: (2) the attorney of any city or town in which a nuisance exists." However, given the discussion of nuisance law in both the counterclaim and in the trial court proceedings, we observe that the parties also tried this case on a theory of nuisance by implied consent. Moreover, in their Appellant's brief, the Groffs specifically argue that the City failed to present sufficient evidence that the properties listed in the counterclaim were nuisances. *See* Br. of Appellant at 10–11.

sances under Indiana law and violate Indiana's and the City's Unsafe Building Law. Therefore, the trial court properly granted the City's request for an injunction pursuant to Indiana Code section 36–1–6–4 (and Indiana Code section 32–30–6–7). We now turn to the Groffs' argument that the injunction is "too broad."

■ "An injunction will not be issued where the applicant cannot demonstrate 'the present existence of an actual threat that the action sought to be enjoined will come about.'" *Adams v. City of Fort Wayne*, 423 N.E.2d 647, 651 (Ind.Ct.App. 1981) (quoting *J.D. Pflaumer v. U.S. Dep't of Justice*, 450 F.Supp. 1125, 1131 (E.D.Pa. 1978)). In other words, "injunctive relief may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Id.*

In *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 599–600 (Ind.2001), the trial court permanently enjoined Felsher from

> appropriating the name, or using or maintaining a website or e-mail address incorporating the name, of the plaintiffs and also "any other person or individual associated with the University . . . for any purpose." The court also enjoined Felsher from nominating the plaintiffs "or any other person or individual associated with the University . . . for positions with any other schools, colleges or universities."

*Id.* at 600 (record citations omitted). On appeal, Felsher argued that the injunction was "unreasonably overbroad" asserting that the injunction should have been limited to the individuals named in the complaint. *Id.* Our supreme court disagreed.

The reputation of the University is directly proportional to the reputation of the individuals it employs. Having noted Felsher's propensity to continue his pursuit against the University and the University officers, the trial court did not abuse its discretion by extending its injunctive order in paragraphs 1–3 to include "any other person or individual associated with the University."

*Id.*[4]

Felsher also argued that the trial court's injunction was too broad because it enjoined him from appropriating the "names and likenesses" of the University, its officials, or any other person associated with the University. *Id.* at 601. Specifically, Felsher argued that his misappropriation only involved the use of the plaintiffs' names and there was no evidence indicating that he misappropriated any "likenesses." *Id.* The court held that the injunction was not overbroad in that instance because "Felsher intentionally invaded the privacy of the plaintiffs by creating and modifying websites and e-mail addresses containing their names;" therefore, "[i]t is *reasonably foreseeable* that Felsher will misappropriate the likenesses of the plaintiffs by further availing himself of the Internet's capacity to feature photographs, images or other representations of identity." *Id.* (emphasis added).

■ In this case, the trial court enjoined the Groffs from "maintaining substandard housing which violates the Unsafe Building Laws of the State of Indiana and/or the City of Butler and that they inspect all of their properties and bring them into compliance with said laws immediately." Appellant's App. p. 8. Further-

---

4. However, the court held that enjoining Felsher from nominating any individual associated with the University for positions with any colleges and universities was overbroad in that it would prevent Felsher from sending nominations under his own name, but this error could be resolved by adding the clarification that Felsher is enjoined from creating an appearance that his nominations are from anyone other than himself. *Id.* at 600–01.

more, the court determined that "any further violations of the Unsafe Building Laws shall be punishable by contempt of court." *Id.* The Groffs contend that the injunction is overbroad because "the plain language of the injunction appears to contemplate *all properties owned by the Groffs* regardless of whether those properties are subject to the current litigation." Br. of Appellant at 11 (emphasis in original). They also argue that the Unsafe Building Law provides means for the City to address any future violations that may occur; therefore, they should not be subject to contempt proceedings for future violations. *Id.* at 12.

At the January 15, 2003 hearing, the City presented evidence that the Groffs own several properties that are nuisances and that are in violation of the Unsafe Building Law. The City also presented evidence that they have received numerous complaints concerning the Groffs' properties, including properties that are not subject to this litigation. Most importantly, the City demonstrated that the Groffs have repeatedly and continuously failed to maintain and/or repair their properties, and that they only take action to repair those properties when forced to do so by the City. Therefore, it is reasonably foreseeable that the Groffs will fail to maintain and/or repair not only those properties subject to this litigation, but also other properties that they own. Additionally, in light of their past and continuing violations of the Unsafe Building Law, subjecting the Groffs to contempt proceedings for future violations is not unreasonable. Under these facts and circumstances, the injunction issued by the trial court was supported by sufficient evidence and was not overbroad.

## V. Attorney Fees

Finally, the Groffs argue that the trial court improperly awarded attorney fees to the City in the amount of $7,449.53. An award of attorney fees is committed to the sound discretion of the trial court, and we will reverse an award of attorney fees only upon a showing of abuse of that discretion. *Tioga Pines Living Ctr., Inc. v. Ind. Family and Soc. Servs. Admin.,* 760 N.E.2d 1080, 1083 (Ind.Ct.App.2001), *trans. denied.* The City requested attorney fees pursuant to Indiana Code section 32–30–6–7,[5] which provides:

> A county, city, or town that brings a successful action under this section . . . to abate or enjoin a nuisance caused by the unlawful dumping of solid waste is entitled to recover reasonable attorney's fees incurred in bringing this action.

Ind.Code § 32–30–6–7 (2002).[6] The Groffs contend that there was no evidence presented that would support a finding that the alleged nuisances were caused by the unlawful dumping of solid waste as required by the statute. Br. of Appellant at 13.

Initially, we note that the term "solid waste" is not defined in the statute. " 'When the legislature has not defined a word, we give the word its common and ordinary meaning. In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries.' " *Koppin v. Strode,* 761 N.E.2d 455, 461 (Ind.Ct.App.2002), *trans. denied* (citation omitted). Waste has been defined to include garbage, trash, and "the undigested residue of food elimi-

---

**5.** Formerly Ind.Code § 34–19–1–2.

**6.** As we stated previously, although the City did not specifically request an injunction under Indiana Code section 32–30–6–7, the parties also tried that issue under a nuisance theory by implied consent. *See* supra footnote 2.

nated from the body, excrement." *See* American Heritage Dictionary of the English Language (4th ed.) website available at http://www.bartelby.com (last visited on July 24, 2003). Merriam–Webster's dictionary defines waste as "refuse from places of human or animal habitation;" garbage, rubbish, excrement, and/or sewage. *See* Merriam Webster Dictionary website available at http://www.m-w.com (last visited on July 24, 2003).

With regard to the properties specifically referenced in the counterclaim, with the exception of the Oak Street property, while the City did prove that they were nuisances, the City failed to present any evidence that the nuisance was the result of the unlawful dumping of solid waste. However, the City did prove that at the Oak Street property a hose was pumping raw sewage out of the house and into the yard, and that there was a significant amount of trash outside of the house. Tr. p. 10; Ex. Vol., Def.'s Ex. 1. Consequently, the trial court properly awarded attorney fees with regard to the litigation involving the Oak Street property. However, because there was no evidence that there was any unlawful dumping of solid waste at the other four properties listed in the counterclaim, the trial court abused its discretion when it ordered the Groffs to pay the City's attorney fees incurred due to the litigation involving those four properties. We therefore reverse the award of attorney fees and remand this case to the trial court for a determination of attorney fees incurred by the City solely as a result of the litigation concerning the Oak Street property.

### Conclusion

The Groffs had adequate notice of the January 15, 2003 hearing, and the trial court properly granted the City's request to have the allegations in its counterclaim deemed admitted. Also, both the demoli-

tion order and the injunction were supported by sufficient evidence, and the injunction is not overbroad. Finally, we reverse the award of attorney fees, but remand this case to the trial court for a determination of attorney fees incurred by the City solely as a result of the litigation concerning the Oak Street property.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

MAY, J., concurs.

KIRSCH, J., concurs in part and dissents in part with opinion.

KIRSCH, Judge, concurring in part and dissenting in part.

I fully concur with the decision of the majority on all issues except for Issue Four regarding the issuance of the injunction. I believe that the injunction here is overbroad, and, accordingly, I dissent as to that issue.