## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 07 2019, 8:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce N. Munson
Law Office of Bruce N. Munson, P.C.
Muncie, Indiana

ATTORNEY FOR APPELLEE

Jay A. Rigdon
Rockhill Pinnick, LLP
Warsaw, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Silver Lake Partners, LLC,

*Appellant-Petitioner,*

v.

Town of Silver Lake, Indiana,

*Appellee-Respondent.*

June 7, 2019

Court of Appeals Case No.
18A-PL-2701

Appeal from the Kosciusko
Superior Court

The Honorable David C. Cates,
Judge

Trial Court Cause No.
43D01-1806-PL-61

**Friedlander, Senior Judge.**

[1] Silver Lake Partners, LLC ("the LLC"), appeals the trial court's affirmation of an administrative order to demolish a building on its property. We affirm.

[2] For decades, Silver Lake Elementary School ("the School") served the residents of Silver Lake, Kosciusko County, Indiana. The School was built in the 1930s and is an Art Deco-style multi-story building containing classrooms and a gymnasium. It closed in 2005, and the school corporation sold it. The LLC purchased the School in 2008. The School has remained vacant and unused since 2008. The LLC has attempted to start a charter school in the School but has failed to obtain regulatory approval.

[3] On May 12, 2009, the Town of Silver Lake ("the Town") enacted an ordinance that adopted Indiana's Unsafe Building Law and created an Office of the Building Commissioner. The Town has cited the School for violations of the ordinance more than 365 times since 2009.

[4] The Town hired Calvin Bolt to inspect the School. He performed inspections on December 9, 2016, and January 2, 2017. On January 10, 2017, he submitted a report to the Town Council. We discuss the report in more detail below, but Bolt identified numerous problems with the roof and other parts of the building. He summarized the School as "not safe or habitable inside and is a hazard inside." Appellant's App. Vol. 2, p. 13.

[5] On March 27, 2018, the Town's building commissioner issued a demolition order, instructing the LLC to demolish the School within fifteen days. The LLC requested a hearing. Hearing Officer Thomas Earhart held an evidentiary hearing on May 16, 2018. On May 30, 2018, Hearing Officer Earhart issued an order approving the building commissioner's demolition order. He determined

the School met the statutory definition of an unsafe building and was "a danger to the health and safety of the public." *Id.* at 147.

[6] On June 9, 2018, the LLC filed a Petition for Judicial Review, alleging the hearing officer's determination was arbitrary and capricious because it was unsupported by evidence. The trial court held oral argument and considered the evidence that had been presented to the hearing officer. On September 12, 2018, the court issued findings of fact and conclusions thereon affirming the hearing officer's order. The LLC filed a motion to correct error, which the court denied. This appeal followed.

[7] The LLC argues the trial court should have reversed the hearing officer's order. The LLC further argues the evidence presented to the hearing officer established the LLC had attempted to correct the problems that had caused the building commissioner to issue the demolition order.

[8] Indiana Code sections 36-7-9-1 et seq. is also known as the Unsafe Building Law ("the USB"). Municipalities and counties may adopt the USB by ordinance. Ind. Code § 36-7-9-3 (1990). Under the USB, enforcement authorities may issue orders requiring property owners to remedy unsafe buildings, including: vacating an unsafe building; sealing an unsafe building against unauthorized intrusion; removal of trash or debris; repair or rehabilitation of an unsafe building; and demolition or repair of an unsafe building. Ind. Code § 36-7-9-5 (2015).

[9] An unsafe building is defined as follows:

a building or structure, or any part of a building or structure, that is:

(1) in an impaired structural condition that makes it unsafe to a person or property;

(2) a fire hazard;

(3) a hazard to the public health;

(4) a public nuisance;

(5) dangerous to a person or property because of a violation of a statute or ordinance concerning building condition or maintenance; or

(6) vacant or blighted and not maintained in a manner that would allow human habitation, occupancy, or use under the requirements of a statute or an ordinance; . . . .

Ind. Code § 36-7-9-4 (2014).

[10] When an enforcement authority issues an order requiring a property owner to take action on an unsafe building, the property owner may request a hearing before a designated hearing authority. Ind. Code § 36-7-9-7 (2015). The hearing authority may affirm, rescind, or modify the order. *Id.* The hearing authority's decision may be appealed to "the circuit or superior court of the county in which the unsafe premises are located." Ind. Code § 36-7-9-8 (2015). This type of appeal is an action de novo, and the court may affirm, modify, or reverse the hearing authority's decision. *Id.*

[11] "Under de novo review, a trial court may, 'to a limited extent, weigh the evidence supporting the finding of fact by the enforcement authority. The court may negate the finding only if, based upon the evidence as a whole, the finding of fact was arbitrary, capricious, an abuse of discretion, unsupported by the evidence, or in excess of statutory authority.'" *Brown v. Anderson Bd. of Pub. Safety*, 777 N.E.2d 1106, 1108 (Ind. Ct. App. 2002) (quoting *Kopinski v. Health & Hosp. Corp. of Marion Cty.*, 766 N.E.2d 454, 454-55 (Ind. Ct. App. 2002)), *trans. denied*. The trial court may not substitute its judgment for that of the hearing authority because "the facts should be determined only one time." *Id.* When we review the trial court's decision in a case involving an unsafe building, we, like the trial court, are required to determine whether its decision was arbitrary, capricious, an abuse of discretion, unsupported by the evidence, or in excess of statutory authority. *Groff v. City of Butler*, 794 N.E.2d 528 (Ind. Ct. App. 2003).

[12] In this case, the LLC purchased the School in 2008. The LLC tried several times to start a charter school in the building but failed to obtain approval from regulators.

[13] The School deteriorated over the following years, and the Town received numerous complaints about its condition. Some complainants saw birds and bats exiting the building. In addition, the School's doors were left propped open at times, and broken windows were visible. Other complainants noted the School was adjacent to a public playground, and unsupervised children had been found trespassing in the building in the past. Fourteen large air conditioning units were installed in the School's windows, and people

expressed concern that they could fall out on passersby. The LLC neglected the lawn and mowed it only sporadically. Finally, the Town's marshal saw sinkholes on the property.

[14] The Town had cited the LLC over 365 times for violations of the unsafe building ordinance. The LLC failed to pay fines related to the citations. In addition, Town officials met with the LLC's members several times over the years, and they did not see any proof that the LLC had the financial resources to pay for the extensive repairs the School needed. Paul Hayden, who works for Indiana Landmarks, a nonprofit organization that seeks to preserve historic buildings, examined the School's exterior. He testified the School was a "large building" that needed "a lot of work." Appellant's App. Vol. 2, p. 133. Hayden further explained, "There becomes [sic] a tipping point where a building is not financially feasible to be restored. We're getting to that point." *Id.* at 134.

[15] Bolt inspected the School from the roof to the basement on December 9, 2016, and January 2, 2017. He noted substantial problems with the roof. He explained that a portion of the roof had a new membrane, but the supporting "sheathing boards" had rotted away and had not been properly replaced. Tr. Vol. 3, p. 45. Without new sheathing boards, the membrane would inevitably sag and leak. Further, the lack of a supporting structure under the membrane made portions of the roof unsafe for walking. In addition, the entire perimeter of the roof needed repair, because portions of the membrane had peeled open along the parapet walls, allowing moisture to infiltrate the building. Bolt

recommended ripping out the membrane and installing new roof sheathing throughout.

[16] Next, Bolt noted bricks and limestone on the west side of the School's exterior were "tilting and tipping out." *Id.* at 43. He explained the bricks would need to be removed and reinstalled to prevent water intrusion. In addition, rain water was entering through the chimney, and mortar joints on the chimney needed to be re-caulked. Bolt also saw seven broken windows. Further, Bolt stated that at least three of the fourteen window air conditioning units needed to be removed because the frames around them had rotted, posing a risk that the units would fall out.

[17] Inside the School, Bolt noticed that many ceiling tiles had fallen out due to saturation from roof leaks. Some of the tiles on the ceiling and floor displayed "extensive mold." *Id.* at 44. There was also mold on the walls of several rooms. Bolt indicated testing was necessary to determine whether the mold was hazardous. In addition, the gymnasium's wooden floor was warped and buckled due to water infiltration. Bolt found several dead birds throughout the School, which indicated that the building had not been sufficiently sealed.

[18] In the basement, Bolt saw mud on the floor and water marks on the wall indicating where flooding had occurred. He theorized that the floor drain was blocked and indicated that further work was needed to determine the source of the water. In summary, Bolt described the school as an "albatross" and

explained that repairing and reconfiguring the building for another use, such as apartments, would cost "a hefty 7 figure amount." *Id.* at 129.

[19] Bolt later advised the Town's council not to enter the School without a respirator due to mold. On one occasion in 2016, the Town's marshal searched the building to see if anyone had broken and entered. He had trouble breathing, which he attributed to mold. On the day of the evidentiary hearing, the marshal had stopped by the School, and he saw broken windows that had not been repaired or boarded up. In addition, James Malcolm testified at the evidentiary hearing on behalf of the LLC. He had walked through the School a week before the hearing, and he conceded that he saw mold and broken windows.

[20] This evidence clearly supports the hearing officer's determination that the School is an unsafe building as defined by Indiana Code section 36-7-9-4. The building has deteriorated, and the LLC lacks the resources to correct the numerous, substantial problems. As a result, the trial court did not err in determining the school is in an impaired structural condition that makes it unsafe to a person or property; it is a hazard to the public health; it is a public nuisance; and it is vacant or blighted and not maintained in a manner that would allow human habitation, occupancy, or use. Further, the building is unlikely to be repaired and restored to use. *See Brown*, 777 N.E.2d at 1106 (demolition order was supported by substantial evidence; the house was in a dilapidated and dangerous state, homeowner had failed to make necessary repairs despite ample opportunity and was unlikely to make repairs).

The LLC argues that it made efforts to correct the problems before the evidentiary hearing, including removing all ceiling tiles. It further argues Bolt's report was "unprofessional" and "vague." Appellant's Br. p. 9. The LLC finally argues Bolt's assessment of roof leaks is wrong. These arguments are not sufficient grounds for reversal. We are obligated to determine whether the hearing officer's decision was arbitrary and capricious, and we have determined that it was not arbitrary and capricious because it was supported by substantial evidence. The LLC presented its arguments to the hearing officer, and on appeal they amount to a request to reweigh the evidence, which our standard of review forbids. *See 409 Land Tr. v. City of South Bend*, 709 N.E.2d 348 (Ind. Ct. App 1999) (trial court order affirming demolition order was not an abuse of discretion; property owner had attempted to make repairs, but repairs were untimely and insufficient to correct the property's substantial problems), *trans. denied*.

For the foregoing reasons, we affirm the judgment of the trial court.

Judgment affirmed.

Riley, J., and May, J., concur.